Beardsley
v.
Warner.

## BEARDSLEY *vs.* WARNER.

An *endorser* of a promissory note, given as *collateral security* for the payment of a sum of money directed by an order of the court of chancery to be paid by the *maker* on pain of *attachment,* has no right to require the creditor to enforce the attachment, previous to calling upon him for payment.

The principle of law that a *surety* is discharged, if the creditor on request neglects to proceed against a *principal*, solvent at the time, and who subsequently becomes insolvent, is not applicable to the case of an *endorser* of a promissory note.

A *receiver* of an estate who has procured such order, may take collateral security for the payment of the debt; and where his so doing is manifestly for the benefit of the fund, it will be presumed that he acted by direction of the court, unless the contrary is shewn.

A *surety* cannot ask the use of the securities and remedies of the creditor to enforce payment against the principal, without tendering an indemnity against all costs and expenses; and when he has been offered by the principal the benefit of the remedies he possessed, he is without excuse.

THIS was an action of assumpsit, tried at the New-York circuit in October, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The suit was against the defendant, as the *endorser* of a promissory note, given by P. G. Hildreth to Edmund Elmendorf, and transferred by him to the plaintiff after due. Elmendorf, as the receiver of an estate in which the wife of the plaintiff was interested, obtained an order from the chancellor, on the 21st November, 1823, that Hildreth pay into court $1150, the surplus of certain real estate sold by him as a master in chancery, in 20 days, or that an attachment issue against him. On the 22d January, 1824, Hildreth gave to Elmendorf his note, endorsed by the defendant, for $912, payable in 90 days, as collateral security for the payment of so much of the money ordered to be paid into court, and a stipulation was entered into that all further proceedings under the order should be stayed until the note became due, and that the arrangement thus made should not interfere with the proceedings under the order, if the note should not be paid, nor any proceedings for the balance, either before or after the note became due. The note was not paid, and due notice of non-payment was given. After the note fell due,

various interviews were had on the subject of the demand between Elmendorf and the defendant, who offered to renew his endorsement from time to time,, in case Hildreth would make partial payments; but insisted that unless he did so, Elmendorf should proceed with the attachment, and told him that he would hold him bound to exhaust the remedy by attachment before resorting to him, and that if he was sued on the note, he would file a bill in equity to compel Elmendorf to resort first to the attachment. At one time the defendant informed Elmendorf that Hildreth was an officer in an insurance company, and could pay if pressed with the attachment. In one of the interviews, Elmendorf offered the defendant to let him, being a counseller of the court of chancery, take out the attachment and execute it against Hildreth, which the defendant declined to do. Hildreth was insolvent when the note was given, and his circumstances have since been growing worse; he had, however, many friends in 1824, and it was proved that had the attachment issued, those friends would probably have come forward and prevented his confinement under the attachmdnt. The jury, under the charge of the judge, found a verdict for the plaintiff for the balance claimed, partial payments having been made. The defendant excepted to the charge of the judge, and now moved for a new trial.

*H. W. Warner,* for defendant.

*G. C. Bronson,* (attorney general,) for the plaintiff.

BY THE COURT. One ground of objection urged to a recovery in this case is, that the note was void in its origin. The *receiver,* it is said, was a purely ministerial officer, and had nothing to do, and, without direction from the court of chancery, could do nothing but receive the money from Hildreth, or proceed with the attachment to enforce its payment. If this objection could be well made, it does not appear very gracious, coming as it does from the defendant, if he was, as he contends, a party to the agreement, and claims the benefit of that part of it which reserved a resort to the attachment. Without deciding that if the receiver had act-

ed without the advice or direction of the court, it would be with the defendant to impugn his conduct, we think that it is not shown that he acted against his duty. If the general power with which he was invested would not authorize him in any instance to take security for the fund which it was his duty to collect, we will presume, where he has obtained security while it was in the hands of a bankrupt, that he has acted in so doing by the particular direction of the court from which his authority is derived, especially when the objection comes from one who has no interest in the fund. What is done so manifestly for the benefit of the fund will be presumed, until it otherwise appears, to be done by the consent of the court, the guardian of the fund and the source of the receiver's power. We cannot concede that this case falls within the rule applicable to notes and obligations given to sheriffs and ministerial officers, for not executing process in their hands. Such contracts are held void, because they are against an express law, or most obvious duty; whilst the duty of a receiver varies with the instructions which he may receive from the court. But if the analogy held, it would avail nothing for the defence. It is admitted that the attachment is tantamount to a *ca. sa.* If a sheriff receives a note on a *ca. sa.*, the plaintiff may, if he please, affirm the act, and the note is valid in his hands. *Townsend* v. *Olin*, 5 *Wendell*, 207. *Armstrong* v. *Garrow*, 6 *Cowen*, 465. 3 *Mass. R.* 403.

The defendant has not shewn that he was a party to that part of the arrangement by which the proceedings relative to the attachment were kept on foot, and the right to enforce the order of the chancellor reversed, if the note should not be paid ; he is therefore to be viewed in no other light than as an *endorser*. We were referred to many authorities shewing the duties of a creditor towards the *surety* of his debtor. Most of the positions contended for by the defendant are not denied, but it is believed they are but partially applicable to this case. The defendant asks for the unlimited application of the doctrine of the case of *Pain* v. *Packard*, 13 *Johns. R.* 174, which is, that if an obligee or holder of a note is *requested* by the *surety* to proceed without delay and collect the money of the principal, who is then solvent, and he neglects to comply with

the request, and the principal afterwards becomes insolvent,
the surety is exonerated. It has been expressly decided by
this court, that the principle of that case is not applicable
where the *endorser* is called on to pay. In *Trimble* v. *Thorne,*
16 *Johns. R.* 152, it is said : " An endorser, though in the
nature of a surety, is answerable upon an independent con-
tract, and it is his duty to take up the bill when dishonored."
The distinction between an endorser and a surety is so clear
in some respects, that it cannot be needful to run it out by any
illustrations ; but in others there is a resemblance. If the
maker of the note pays, the endorser is discharged from his
contract in the same manner as is a surety by the principal's
paying. If the creditor does any act impairing the endorser's
right to resort to the maker for indemnity for what he as en-
dorser has become liable to pay, he can shew such act in ex-
oneration of himself from his engagement to the creditor ;
but the endorser cannot require of the creditor to exhaust his
remedies against the maker, before he calls upon him to per-
form his contract. It is not of the essence of the contract
between the holder and endorser, that he should seek
payment from the maker, and not of the endorser only on
the contingency of an inability on the part of the maker to
pay. 17 *Johns. R.* 393. 3 *Wendell,* 216. The moment the note
is dishonored, and notice of that fact duly given to the endor-
ser, the holder's right to sue him is perfect, and this right is
not impaired as long as he remains passive. 9 *Cowen,* 206.
2 *Bos. & Pul.* 62.

The inquiry does not properly arise in this case, how far
the equitable principle, that a surety, who pays the debt of
his principal, is entitled to be substituted in the place of the
creditor, as to all the securities and means possessed by him to
compel payment by the principal debtor, is applicable to an
endorser. If a surety and an endorser stand on the same
ground, the defendant here has no just reasons to complain
that these securities or means have been witheld from him.
The equitable principle is, that the surety must indemnify the
creditor for the costs and expenses to which he may be ex-
posed, by the use of the creditors security and means for his
benefit. 4 *Johns. Ch. R.* 132. If a court of chancery would

not have compelled Elmendorf to use the attachment for the defendant's advantage without being indemnified, the defendant could not properly require the same thing, without offering to indemnify against the costs. As the cost of the proceeding against the maker of a note cannot be collected of the endorser, it would seem to be unreasonable that the holder, whose right to receive payment is perfect against the endorser, should still be obliged to go against the maker, and incur expenses in a proceeding for the benefit of the endorser, until he is indemnified by him. What excuse can the defendant make for not accepting the offer to let him use the attachment? If there was no right to resort to it, then Elmendorf could be under no obligation to attempt to use it. If it could be legally used, then, as it was to be used for the defendant's benefit, he ought to incur the expense; and if his objection to using it himself was on account of the expense, it was unreasonable. Equity only requires that the surety should be substituted, he defraying the expense and running the risk ; and the offer in this case was in effect to substitute the defendant in the place of Elmendorf. The defendant's requirement was the more unreasonable on account of the insolvency of Hildreth; but it is unnecessary to inquire whether this fact would have constituted an excuse for not proceeding to issue the attachment, because the plaintiff is not shewn to be in a situation to need any such excuse.

Another ground of defence assumed on the argument was, that the validity of the proceedings for an attachment were rendered unavailable to the defendant by the transfer of the note. There are two answers to this objection. The defendant cannot interpose such objection, if it was understood when the note was given that the payee was at liberty to negotiate it; and the fact that the note was made negotiable, unless countervailed by some proof of an understanding to the contrary, establishes the payee's right and a permission to transfer it. If he might do so before it was due, that right was not impaired by his keeping it till after its maturity, before he exercised it. But the more conclusive answer to this part of the defence is, that the transfer is merely nominal; the absolute interests of the parties have not been

changed; the fund in the hands of Hildreth belonged to the plaintiff's wife, and Elmendorf was the agent to collect it. He took the note in question, and transferred it to the person whom Hildreth knew was the party in interest; Hildreth could not therefore object to the issuing of the attachment on the ground of the transfer of the note. The facts do not afford a pretence for saying that time was given on this note to the maker, so as to exonerate the defendant. 5 *Wendell*, 501.

