## Oakley *vs.* Boorman & Johnston.

*A guaranty* of a debt in the form of *an endorsement of a promissory note* is obligatory upon the guarantor; and in case of non-payment by the *debtor*, the *guarantor* is liable for the whole amount of the debt, and not merely for the sum received by him, with the interest thereof.

A promise or obligation cannot be defeated in whole or in part, on the ground of the *inadequacy* of the compensation received for the obligation incurred —the slightest consideration is sufficient to support the most onerous obligation; the meaning of the rule that you may impeach the consideration is only that you may show *fraud, mistake* or *illegality* in its concoction, or *non-performance* of the stipulations of the agreement on the part of the promissee.

ERROR from the superior court of the city of New York. Johnston & Boorman sued Oakley as the endorser of three promissory notes, bearing date 9th July, 1835, amounting together to the sum of $7868 80, made by one John Ordronaux, payable *eight months after date*, to his own order, and subsequently endorsed by him and passed to the plaintiffs for goods sold by them to a mercantile firm doing business under the name of *Helic, Verren & Co.* On the 14th September succeeding the date of the notes, the defendant, for the consideration of $190, was induced to guarantee the payment of the notes, *which he did by endorsing the notes.* Between two and three weeks after the endorsement, Ordronaux failed. The defendant attempted to prove that the plaintiffs had knowlege previous to procuring the defendant's endorsements that Ordronaux's solvency was doubtful. The endorsements of the defendant were procured by a broker, who charged the plaintiffs $700 for procuring them, though he paid the defendant only $190. After the defendant had agreed to endorse, but before he affixed his signature to the notes, he inquired of the broker what he purposed to do with the notes, and was told that he intended to have them discounted at the Union Bank. The declaration counted upon the notes, and also contained the common money counts. The counsel for the defendant insisted that the defendant could not be held as *endorser ;*

Oakley v. Boorman.

that the notes had never passed into his hands; and at the time he put his name upon them, they were the property of the plaintiffs. That if the defendant was liable at all, it was as guarantor; that his undertaking was to answer for the debt of another; and that to make such an undertaking obligatory under the statute of frauds, it was necessary that it should be in writing, subscribed by the defendant, and for a consideration to be expressed on the face of the instrument. The counsel further insisted, that if the defendant was liable, his liability did not extend beyond the amount received by him on endorsing the notes. The chief justice of the superior court charged the jury that the plaintiffs were entitled to recover against the defendant as *endorser*, provided the jury, from the testimony, were satisfied as to the plaintiff's right to recover against the defendant. The jury found a verdict for the plaintiffs, on which judgment was entered. The defendant having excepted to the charge of the judge, sued out a writ of error.

*S. Stevens*, for the plaintiff in error.

*G. Wood*, for the defendants in error.

*By the Court*, COWEN, J. Had this been an ordinary contract of guaranty or insurance, there is no doubt that it must have contained all the requisites claimed for it by the defendant in the court below. A consideration must have been expressed, and been followed by an agreement to guarantee or insure the payment, and the whole been subscribed by the defendant below.

But the defendant below did not put himself in the position of a man expressly contracting to pay the debt of another by an ordinary simple contract, calling, in order to give it effect, for all the express requisites demanded by the statute of frauds. He chose to satisfy the statute in another way, which he had a perfect right to do. He endorsed these negotiable notes, in the hands of the plaintiffs, saying, "I choose to guaranty the debt in that form." This gave the plaintiffs below the authority to write over his

name an order or bill of exchange upon Ordronaux, to pay the money, and subjected him as an endorser. *Smallwood* v. *Vernon*, 1 Strange, 478. Lord Ellenborough, in *Ballinglass* v. *Gloster*, 3 East, 482. Suppose that for the same consideration he had signed his name as maker to a note in blank, authorizing the plaintiffs to fill it up with the seven or eight thousand dollars; is there a doubt that he would have been liable as maker, and might have been so treated throughout? That doctrine is settled in respect to an endorser. *Russel* v. *Lansiaffe*, Dougl. 514. There a man endorsed blank notes with intent they should be filled up, and money raised on them. The plaintiff took them, knowing how and why they were endorsed, and sued the endorser—the declaration stating that he endorsed the notes *after* they were made. The defence was that they were endorsed prematurely. It was however given up by the attorney general. After Lee had argued it, Lord Mansfield said it did not lie in the defendant's mouth to say the endorsements were irregular. The defendant below here attempted the same thing in another form. He endorsed the notes for a valuable consideration while they were in the hands of the plaintiffs below, making out a complete case in point of form. He shall not after that be allowed to gainsay his own act. He is estopped; the act enures as an endorsement before the plaintiffs below obtained the notes. To all this the defendant below agreed, and he shall not be received to violate his agreement.

It has been held by several courts, that where a man puts his name on a note not negotiable, with intent to guarantee its payment, you may write a guaranty, indeed a promissory note, over the name, and expressing a valuable consideration. *Josselin* v. *Ames*, 3 Mass. R. 274. *White* v. *Howland*, 9 id. 315. *Hunt* v. *Adams*, 5 id. 358. *Palmer* v. *Grant*, 4 Conn. R. 389. *Beckwith* v. *Angell*, 6 id. 315. And see other cases cited in *Dean* v. *Hall*, 17 Wendell, 219, 220; *Seymour* v. *Van Slyck*, 8 id. 421, 2, and the cases there cited by Sutherland, J. At least, you may write the ordinary endorsement, which amounts to a bill of exchange. Chit. on Bills, 218, 219, Am. ed. 1836; *Hill* v. *Lewis*, 1

Salk. 132; and charge the defendant by notice. This would be making the contract most favorable to him. It is of the nature of a note or bill, and equally so of an endorsement even in blank, that it imports a consideration, the same as a specialty. Chit. on Bills, 79, Am. ed. 1836. Bayley on Bills, 33, Boston ed. 1836.

Since the revised statutes authorizing you to impeach the consideration of a specialty, the two species of paper occupy more nearly the same footing. In both, you may show a total or partial want of consideration; though in the case of negotiable paper, you may be cut off from that right by a *bona fide* transfer. But as between the original parties, either species of paper, imports a consideration; and this is considered a sufficient expression to satisfy that branch of the statute of frauds which requires that a guaranty of another's debt should show the consideration upon which it is made. See *Turnbull* v. *Trout*, 1 Hall's R. 336, and the cases there cited. Therefore, it is quite clear, that the suit was correctly brought against the defendant as endorser.

But it was strenuously insisted, that, admitting the defendant to be liable as endorser, he is so to the extent only of the consideration he has received. It is admitted that, had the note been *bona fide* endorsed before it fell due to the Union Bank, for the purpose of obtaining credit at which, Hamilton told the defendant his name was required, there would have been an end of the question. The bank would then claim by a title paramount in the eye of the commercial law; and the endorsement must have stood incapable of qualification. But it is equally well settled, as a general rule, that where such paper is contested between the original parties, whether payee and maker, or endorsee and endorser, the original consideration is open to examination; and the recovery may sometimes be reduced to the real consideration received, whatever that may have been. *Prima facie*, the liability of the undertaker is co-extensive with the face of the note. But it is so no longer, when it appears that the consideration came short of it. Such too, would now probably be the rule, even in regard to a specialty; at least, it would be so in case of a total want or

total failure of the consideration, in either of which cases, the plaintiff could not recover at all. In the case of a part consideration originally, or a partial failure, this is now uniformly held to furnish a defence *pro tanto*, though it is said you may still recover upon the note or endorsement so much as the consideration shall appear to have been, or so much as has not failed. In such case you certainly do not recover *according* to the special contract on which the suit is brought, if you can possibly be said to recover *upon* it. The promise on which the recovery is had, in all such cases seems to be collateral. It is implied by law, and different from what the parties have expressed, in so much that, on an express promise to pay one thousand dollars, you may recover as on a promise to pay but one hundred. It would be more logical, perhaps, to say that you do not, in such case, recover upon the special contract; that it is defeated or destroyed, because not sustained by the proper aliment, and the party is thrown back upon his common counts, to recover as upon the original consideration. Suppose that a horse were warranted to be sound, and sold, on a note of $200; but, by breach of the warranty, the party ought to recover but one hundred; the note might be dismissed as void; but by inserting a count for goods sold, the inferior sum might be recovered on the usual implied obligation to pay what the horse, which the defendant had purchased and converted to his own use, was worth. So of money advanced as the consideration of making or endorsing a note much larger in amount than the money in consideration whereof it was so made or endorsed; the implied obligation is to refund the money; and the action is, perhaps, more properly for money had and received. This theory is not, however, maintained, as I apprehend, in practice; for the note may be negotiated after it is dishonored, and the holder recover the sum, thus equitably due, as upon the paper itself. The law, therefore, seems to raise a new negotiable contract between the parties; or, rather a contract which is different from the one which they have expressed; and the holder recovers according to the contract thus created. It is partially avoided, and left to avail with all its nego-

tiable qualities about it, subject to be qualified by equities which may exist against it. The phrase is, that a *mala fide* holder takes with the same, but no greater rights than the original party from whom his title is derived. It is enough that the contract of the party is perfect on its face, as that of a maker or endorser. It may be cut down ; but beyond that, it maintains its character in all respects, whether in the hands of a former or any subsequent holder.

What are the extent and principle of that defence by which a negotiable paper may be thus reduced ? In the case of a simple endorsement, for the consideration of a sum of money, which is less than the face of the note, the endorser is liable for the sum he received and that only. This has been repeatedly held, where a valid business note has been sold for less than its face, and especially where such a limitation has been necessary, in order to avoid the imputation of an usurious intent. *Braman* v. *Hess*, 13 Johns. R. 52. *Munn* v. *The Commission Company*, 15 id. 44. *Cram* v. *Hendricks*, 7 Wendell, 569. But where the party endorses in such case, with the avowed purpose of securing the full amount of the note, it has never been holden that the contract could not be avoided on the statute of usury. Otherwise, the transaction is regarded as a sale of the note, the vendee to take his chance of collecting from the maker, with the privilege of resorting to the endorser for the real sum advanced and the simple interest. The contract being open to such an interpretation, it has been uniformly holden in this state, that the transaction is not usurious, though it may have often been made a cover for usury and by some courts is treated as usurious on its face. I have just now cited the prominent cases decided by this court and the court of errors. On these the plaintiff in error relies. It is insisted on the authority of these and like cases, see *Livingston* v. *Hastie*, 2 Caines, 248, and 13 Johns. R. 52, Bayley on Bills, 544, Bost. ed. 1836, and cases there cited, as between the original parties, or a third person holding *mala fide*, you may universally inquire into the value of the consideration, and the amount of obligation shall be reduced and made commensurate with it. The proposition, put in

that form, is quite inaccurate, and will not hold in one instance out of a thousand. By departing from the agreement of the parties, there is scarcely an instance wherein you may not show that the obligation is in some points of view greater than the consideration which was paid for it. Almost every bargain is incapable of being made exactly equal on both sides; and if we suppose the losing party to have secured his side of the obligation by a note or endorsement, and allow the abstract value of the consideration to be looked into as a guide, there would be no safety in commercial paper, as between the original parties. Such a principle would lead to a perpetual inquiry into the adequacy of the consideration, and courts would be put to the office of making new bargains or destroying or modifying those already made, instead of enforcing them. Hence the law has declared, that the slightest consideration is sufficient for the greatest undertaking, see 1 Wms. Saund. 211, *b*, close of note 2, Phil. ed. of 1807; and when you seek to impeach the consideration, you do not address yourself to its inadequacy, *Solomon* v. *Turner*, 1 Stark. R. 51, but the meaning of the rule is, if there were fraud, mistake or illegality in its concoction, or if the party seeking to enforce it has himself violated some obligation incurred on his part : for instance, a warranty, an engagement to deliver goods, or the like, the promise sought to be enforced may be destroyed or reduced, according to the measure of the defect. See the various instances, Bayl. on Bills, 530 to 544, Bost. ed. 1836. Id. 557 to 570. The same result follows from matter of legal defeasance or discharge. A contract of insurance against the perils of the sea or against fire or of a life, for a small premium, many times turns out, according to the event, to be extremely unequal. Yet suppose the underwriter were, in every such case required to give security by the endorsement of a third person, who enters into the collateral engagement in consideration of even a still less sum, is it to be endured that, on a loss happening, he should bring down his contract to the trifle advanced by way of premium? Why may not the principal obligation be put in the form of a note or endorsement, with a stipulation that the paper should be

void in the event that no loss happens? Can there be a doubt that such a contract would be valid? Yet if, in case of a loss, we allow ourselves to be governed by the pecuniary amount of the consideration, we violate the rule of law which declares the slightest consideration sufficient. The inquiry in all such cases is, not how much you have received as a consideration for your promise; but what is the amount that you have really promised to pay. You may indeed impeach the consideration, but not for its amount. In the case at bar, the defendant was allowed to show every circumstance tending to prove that he was circumvented. He sought to prove that the plaintiffs below were alarmed and endeavored to deceive him as to the responsibility of Ordronaux; that the broker set up a false pretence of the real object being to put the note in a condition for negotiation at the Union Bank; and the question of fraud was, we are to intend, properly submitted to the jury, who found that the contract was fair in all respects. The very notion of inadequacy of price is wholly unknown to the law of insurance. No matter how great the risk taken, nor how small the premium; or on the other side, how enormous the premium or slight the hazard, if the contract be fair. Verpl. on Contr. 42. It is not for us to hamper Mr. Oakley, or any other citizen, in such a way as to preclude his making money by insuring the debts of his neighbors. It is enough that he has not been imposed upon. He was *sui juris*. He fixed the consideration of his endorsement; and had it been to secure a much larger amount, the result must have been the same. There is no distinction, in principle, between an endorsement to secure future advances, and an endorsement to secure a precedent debt. Indeed, so far as safety may be concerned, the latter is the best for the guarantor. The guarantee, in the first case, advances all upon the faith of the contract, and so the consideration is larger on his part; but the guarantor is bound though he receive nothing, and may incur a great and indefinite loss on the amount yet to be advanced, he knows not how much. An endorsement to secure a precedent debt is very common in consideration of a few months' credit. See an instance in *Livingston v.*

*Hastie*, 2 Caines, 246, also in *Free* v. *Hawkins*, 1 Taunt. 92, 1 Moore, 535, *S. C.*, *Beardsley* v. *Warner*, 6 Wendell, 610, 8 id. 194. What, in that case, is the consideration which the endorser gets? Most commonly nothing, and all that the endorsee suffers is a short delay. The endorser may say in such case, with at least equal truth as in the case at bar, that the consideration is short of the amount for which he became bound. There are many cases in the books much stronger than this; most of the cases wherein actions on wagers have been maintained are stronger. See *Good* v. *Elliott*, 3 T. R. 639, and the cases there cited. *The Earl of March* v. *Pigot*, 5 Burr. 2082, is among the most striking. Two young heirs apparent, at New Market, agreed, as the report has it, to run the lives of their fathers against each other by a bet. The plaintiff's bet was 1600 guineas against 500. The defendant gave a note to the plaintiff of 500 guineas, payable if his (the defendant's) father died first. In fact he had already died, though this was not known to either party. The consideration was holden sufficient. Lord Mansfield said, "The question is what the parties really meant." He answers, "The intention was that he who came first to his estate should pay this sum of money to the other who stood in need of it." And scandalous as the transaction was in point of morals, yet being, by the English law, technically valid, the consideration was held sufficient. If this be deemed an extravagant case, take it that the defendant's father had died the next day, and yet all the consideration would lie in the chance of the father on the other side dying first, and so obtaining the sum bet on that side, which would thus be seen by the event, to be the merest trifle. But the case, as it stood, has been lately recognized as law in *Barnum* v. *Barnum*, 8 Conn. R. 469. There was a rumor that a lottery ticket had drawn $2000, on which the defendant purchased one fourth of it, and gave his note to the plaintiff for $200; whereas the ticket had at the time come out a blank. Daggett, J. said, "This for aught which appears, was a fair speculation. Neither of the parties, as the facts show, knew the fate of the ticket. It was, therefore, a bargain of hazard.

Oakley v. Boorman.

In the absence of all fraud, it is ' not easy to see why the plaintiff should not recover upon the principles of law." I have before mentioned contracts of insurance, to which the endorsement now in question more properly belongs. And there is a large class of contracts which we should impeach, by deciding that the amount of the recovery can in no case exceed the money paid as a consideration. These are called by Pothier, 1 Ev. Poth. 10, 11, Lond. ed. of 1806, aleatory (or hazardous) contracts. He says such contracts are those by which one of the contracting parties, without contributing any thing on his part, receives something from the other, not by way of gift, but as a compensation for the risk which he runs. Among such he instances all games of chance, wagers and contracts of insurance ; whereas the mere sale of a note comes within one subdivision (*do ut des*) of commutative contracts. Id. 10. Either may, under our law, unquestionably be made in the form of a note or endorsement, and the extent of the consideration, as between the original parties, may be inquired into; but they must be sustained according to the intent and object of the parties, as in *Earl of March* v. *Pigot*. The case of *Braman* v. *Hess* and *Cram* v. *Hendricks*, and their kindred cases, cannot be maintained except on the same principle. The court must be able to say that where a note of $1000 is sold and endorsed on an advance of $900, the intent of the parties, endorsee and endorser, is that the latter shall be holden for the $900 only ; or it must declare the endorsement void for usury. To maintain such an endorsement, the doctrine of presumption in favor of an innocent intent has been very strongly applied. Courts have inferred, without explanatory evidence, that a contract which in connection with the consideration paid, imports usury in its terms, was meant to be for simple interest only. But no court, I trust, will ever hold that, should evidence *aliunde* be given, showing the real intent of the parties to be according to the import of the endorsement, it could be sustained for a moment.

The judgment of the court below is affirmed.