Opinion of the court by
Mr. Chief Justice Shakkey:
The defendants were accommodation endorsers of a bill of exchange drawn by John F. Broadnax, dated the 1st of January, 1837, payable in New Orleans, at six months, which was protested for non-acceptance on the 16th of the same month. The holders, the plaintiffs in error, are citizens of New-Orleans, the maker being also a citizen of the state of Louisiana, and the defendants are citizens of this state. On the 24th of March, 1838, the defendants wrote to the plaintiffs, and requested them to sue the drawer of the bill immediately, or they would consider themselves discharged. The maker at that time had twelve or fifteen ne-groes unincumbered, but conveyed them away in June, and shortly afterwards died insolvent. On the 16th of April, 1838, this suit was brought, and on the trial the defendants relied on the notice and the failure to sue, as a discharge; and so the court instructed the jury, which is now assigned as error.
The question here presented has received frequent adjudications, and some difference of opinion seems to exist in regard to the rule of law. It is contended that an accommodation endorser is but a surety, who has a right to require diligence of the holder in suing the principal, and authorities are cited which do sustain this position. To a certain extent, and for certain purposes, an accommodation endorser .may be regarded as a surety. The object of such an endorsement is to secure the debt, but the undertaking or contract in a strictly legal point of view is materially different from that of an ordinary surety. In the one case it is several only, whilst in the other it is always joint, or joint and several. An endorser undertakes to pay the debt himself on condition; when the condition is performed by giving him notice of demand and refusal, his undertaking becomes absolute; it is not *695 secondary. The holder of a protested bill may proceed against either or all of the parties to it, at his election, but by separate actions. Our statute, it is true, has changed this rule, but it does not apply in this case, because the maker was not a citizen of the state.
By the common law there was neither a legal or an equitable obligation on the holder to sue the maker first, and if he may sue any party, how can it be that an endorser is discharged if the holder fails to sue the maker on request. Such a proposition is at war with principle. It is repugnant to the nature of the contract. To ¿Ilústrate it by the case before us: Thatcher and Bodley say to Bullit, Shipp & Co., we are but accommodation endorsers for Broadnax; sue him immediately, or we shall consider ourselves discharged; and thereupon they immediately sue Thatcher and Bodley, but do not sue Broadnax. Can any one question their right to do so ? Certainly not. Could Thatcher and Bodley say, we did not tell you to sue us,- but Broadnax, which you were bound to do. Would such an answer constitute any defence to the action, and if it would not, there is no foundation for the position. As regards endorsers, the notion of their being discharged by the delay of the holder is predicated on the assumption that the drawer must be first sued, or at least it resolves itself into that, and as that is not true in principle, the idea is fallacious. „ .
When a note or bill is protested the endorser stands as an individual contractor, bound to lift the bill immediately, and will the law favor him, and ultimately discharge him for standing out in violation of his contract ? The law does not suppose that he can be injured by delay. It does not tolerate delay on his part, but requires immediate payment. If he is to be discharged by a failure to sue the maker, even after notice, it is but a reward for a breach of contract and of good faith. He has his recourse against the maker, and if there be danger of losing that by delay, his duty is plain; let him pay the debt according to his contract and take his recourse. His condition and his liability are different from a surety in a bond. A mere surety in a joint liability may resort to chancery and compel the holder of the bond to use proper *696 diligence. In both cases, however, a new and binding contract for delay would discharge the surety.
This view of the subject seems to be the necessary result from the nature of the contract, and it is supported by most of the adjudged cases. It is true that the decisions are conflicting. The cases of Paine v. Packard, 13 J. Rep., and King v. Baldwin, 17 J. Rep. seem to be leading cases in favor of the defence here set up, and yet they have been much questioned even in New-York. The question was very fully investigated by Chancellor Kent in the last case cited, reported in 2 J. C. Rep., and he even denied the law to be as decided in Paine v. Packard. In the case of Beardsley v. Warner, 6 Wendell, 610, the court refused to apply the rule established in Paine v. Packard, to the endorser of a promissory note, and he was consequently held responsible, although he had given notice to sue. The court said “ the moment the note is dishonored and notice of that fact duly given to the endorser, the holder’s right to sue him is perfect, and this right is not impaired as long as he remains passive.”
These remarks apply with all their force to the present case, and it is an authority directly in point, so that even in New York, where mere sureties are held to be discharged if prejudiced by delay, endorsers are placed on a different footing. In Tennessee and Alabama the courts have adopted the rule of Paine v. Packkard, and have also applied it to endorsers. In the case in 10 Yerger, the court admitted that if the question were res integra, they might have decided differently; but the question was settled in the case in 3 Yerger, and they would not depart from it. In that state there is a statute which may have had an influence on the decision. Contrary decisions, however, are numerous, in which the defence here set up has been overruled. The point was made in Crane v. Newell, 3 Pick. 612, and held to be no defence. The reporter has added a note of many authorities to the same effect. The case of Hunt v. Bridgham, Ib. 581, was of the same kind. These were cases of sureties, not endorsers, and if sureties will not be discharged by mere delay, unaccompanied with fraud, or an agreement not to prosecute the principal, certainly endorsers will not.
*697 • The same doctrine is reiterated in the case of Frye v. Baker & Jennings, 4 Pick. 382, which was also a case of mere suretyship. The case of Billows v. Lovel, 5 Pick, was a suit on a joint and several promissory note, and it was held that the refusal of the creditor to sue the principal on the request of the surety, unaccompanied with an oifer of indemnity against the costs and charges of the suit, is not a defence at law for the surety, al"though the principal may have become insolvent. Now even if these defendants occupy the attitude claimed for them of mere sureties, still by these authorities, their defence must be unavailing.
But the Massachusetts cases do not stand alone. They are fully sustained by the cases cited by counsel from 1 Bailey’s Rep. 3 Call’s Rep. 1 Leigh’s Rep. and 5 Monroe. The case of Kerr, Administrator, v. Baker, Walker’s Rep. 140, was a case of a surety; and it was held that he was not discharged by the failure to sue the principal, after notice given to do so. The most of these cases are in exact harmony, and must be considered as decisive of this question.
The judgment must be reversed, and the cause remanded.