The general cross-interrogatory must be answered as well as the particular ones, and if it is not put and answered the deposition taken on commission will, in general, be suppressed. (Kimball
v. Davis, 19 Wend., 437.) The reason given for this requirement is this, that unless it is done, it is impossible to say that the witness has told the whole truth. (S.C. in error, 25 Wend., 259, 268.)
In the case before us, as appears from the printed book,
there were sixteen cross-interrogatories, the sixteenth being the general one. They were, beyond doubt, answered seriatim up to and including the fifteenth, each cross-interrogatory appearing to have been put separately and answered separately as the cross-interrogatories appear, each by itself, and each followed immediately by the answer intended for it. And the answer thus given to the fifteenth is full and complete, without the phrase "and deponent further knoweth not," which immediately precedes the signature of the witness. In the printed case this phrase appears attached closely *Page 521 
to the answer to the fifteenth cross-interrogatory as part of one sentence. Then follows the name of the witness as if signed by him, and then follows the sixteenth cross-interrogatory, the general one. In the original deposition, which was produced before us on the argument, it does not thus appear. The cross-interrogatories are together, in order, as they were attached to the commission when it was issued. Interposed between them and the answers to them, are the answers to the interrogatories in chief, in order and regularly numbered. Then come the answers to the cross-interrogatories in order, and regularly numbered, up to and including the fifteenth. Then follows the phrase above quoted, "and deponent further knoweth not." This phrase is not joined to the answer to the fifteenth cross-interrogatory, as part of the same sentence, as it appears in the printed case. It is disjoined from it, a punctuating period intervenes, and some space of clear paper also. And then comes the signature of his name by the witness. And there the deposition, so far as the witness is concerned, ends. There does not follow, as in the printed case, the sixteenth or general cross-interrogatory, after the name of the witness, and with no answer succeeding it. There has been some blunder of copyist, or printer, or some one else, by which the printed case does not truly present the fact. Now if that phrase, "and deponent further knoweth not," had appeared beyond dispute to have been uttered by the witness in response to the general cross-interrogatory, it would, beyond dispute, have been a sufficient answer to it. It is the answer which such an interrogatory usually obtains. It lacks nothing to indicate it as given in response to that cross-interrogatory, which is had by any answer in the deposition to any other cross-interrogatory attached to the commission, save that it is not numbered as are the other answers. Prefix to it the number "sixteen," and there would not be a shadow of reason for saying that it was not in fact a response to the sixteenth cross-interrogatory. Is it less an answer for that lack? As before remarked, the object of insisting upon an answer to such a cross-interrogatory, is that the witness shall tell, and *Page 522 
shall be known to have told, the whole truth. But when, after detailed answers have been given to specific cross-interrogatories, he further says upon his oath, "and further deponent says not," has not his knowledge been searched and his conscience touched to reveal his knowledge? And are we to assume that it has not, because it is not in every minutia apparent that the test of this general cross-interrogatory was at the instant applied to him? We think it apparent, from the original deposition, that the answer embodied in the phrase above given was uttered in reply to the general cross-interrogatory, under the effect of that cross-interrogatory applied to the mind of the witness immediately preceding the giving of the answer, and that all the purposes of such an interrogatory have been fulfilled. The objection made at the trial to the reading of the deposition in evidence, was not well taken.
No place of payment was named in the note. In such case, demand of payment at the usual place of business of the maker, though he be absent, is sufficient; or at his residence; or to him in person. (Holtz v. Boppe, 37 N.Y., 634.) And where such a note is made by a partnership, a demand of one of the partners in person, or a demand at the usual place of business of the partnership is sufficient. (Story on Prom. Notes, § 239.) The makers of the note in suit were partners, and it was made by them as such, in their partnership name; demand of payment was made on the proper day, of one of them in person, after the notary had on the same day gone to the last usual place of business of the partnership, for the purpose of making demand there, and found no one of the firm. The name of the firm was Bassett, Beecher Co.; and on the question being asked Bassett when a witness: "When did Bassett, Beecher Co., stop business?" He replied: "They were thrown into bankruptcy in June, 1871." I think that we may infer from this that by proceedings in the Bankrupt Court, the partnership was declared bankrupt, and its effects and affairs taken charge of by the officers of the law. The partners had separated, *Page 523 
though there was no formal dissolution of their partnership by them. But bankruptcy of one member, or of all the members of a firm, works a dissolution of the copartnership. (Story on Part., § 313.) On this state of facts and the law, it is contended by the learned counsel for the appellant that the demand for payment of the note should have been made of each of the former partners. He cites no authority for his position. I have been unable to find any. If, by the dissolution of the partnership by bankruptcy, and the separation of the partners, they must thereafter be treated as joint makers who are not partners; I think that the force of the authorities is, that to charge an indorser of their note, a demand must be made of each of them, save where the other circumstances are such as to excuse a demand. For to charge the indorser of the note of joint makers, not partners, demand must be made on each. It was so held inUnion Bank v. Willis (8 Metc., 504), which case was approved in Arnold v. Dresser (8 Allen, 435). In Willes v. Green
(5 Hill, 232), NELSON, Ch. J., said it was so settled; Harris
v. Clark (10 Ohio, 5), is to the contrary, but that case is limited in Greenough v. Smead (3 Ohio St., 415). It is seen, therefore, that there is a distinction taken between the case of a note of joint makers who are not partners, and a note of partners who are still partners at the maturity of the note. That distinction rests upon the fact that partners are but one person, in legal contemplation; that each partner, acting in such capacity, is not only capable of performing what all can do, and of receiving and paying out that which belongs to all, but by such acts necessarily binds them all; that, as incident to such joint relations, all of the partners are affected by the knowledge of one. These things do not pertain to the relation of joint makers who are not partners. Hence, while a demand of one partner is equivalent to a demand of all, a demand of one of joint makers not partners is not. (8 Metc., supra.) And so a demand upon one partner is sufficient, because he represents the firm, and a dishonor by one is a dishonor by all, and each is presumed to have *Page 524 
authority to act for the others; while in the case of a note of joint makers not partners, the indorser has a right to rely upon the responsibility of all and each, and may insist upon a dishonor by each. (Story on Prom. Notes, § 255.) So that the inquiry seems to be, whether a dissolution of a partnership, effected by the bankruptcy thereof, has so far changed the relations of the members of it as that the act or knowledge of one does not affect all the rest. Undoubtedly, a dissolution of a partnership, however brought about, puts an end to certain of the joint powers and authority of all the partners. Perhaps it may be said that no one of the partners can do any act in any manner inconsistent with the primary duty of winding up the whole concerns of the copartnership. This is emphatically the case when the dissolution has been wrought by the bankruptcy of the firm, for then the effects thereof have passed into the control of the court, and all payments therefrom or chargeable thereon are to be in the direction of the court, or according to its rules and practice. The principle on which a partner, during the existence of a partnership, may by his act bind his copartners, is that which governs the relation of agent and principal. The power of an agent to bind his principal ceases when the agency is ended; so that even payment by a former agent of a valid debt against his former principal, gives him no right against the latter. The principle has not, however, been carried so far in the case of a copartner. His relations with the other members of the firm have not been entirely severed. He may, from his own means, pay a valid subsisting debt against the copartnership, and have the right to claim an allowance therefor on the settlement of the affairs, or contribution from the others. (Major v. Hawkes,12 Ill., 298.) And a general statement has been made by a text writer of repute, that every act of administration which is necessary for winding up the concern may be effectually done by one partner, and the rest be bound. (2 Bell Comm., bk. 7, c. 2, p. 643 [5th ed.].) And the author expressly includes in this a case of dissolution by *Page 525 
bankruptcy, though it is apparent that the property of a bankrupt concern may not be meddled with by one of its former members. But it is clear that the relations of the individual members of the firm are not, by a dissolution thereof, so completely severed as that no act of one can have any effect upon the others. (Robbins v. Fuller, 24 N.Y., 570.) Each and all have still an interest in the settlement of the affairs of the firm, in the payment of its debts, and the adjustment of the liability of each to it and to each other, and in the just division of any surplus. Though the copartnership be insolvent, as in this case, and it be declared bankrupt, the members individually may be solvent, and liable to be affected by the final result of the bankrupt proceedings. And so there does, after a dissolution, still continue that common interest in past transactions, and in the present and future legitimate consequences therefrom, as that a joint power and authority in relation thereto continues; and while, after dissolution, no member of the late firm can by his act create a new liability against his former copartners (24 N Y, supra), or bind them to an alleged liability (Hackley
v. Patrick, 3 J.R., 536), or revive an extinct one (VanKeuren v. Parmelee, 2 N.Y., 523), he may do some acts which shall affect and be binding upon them, when such acts are confined to matters in which they all still have a common interest and are under a common liability. Thus, it has been held that one who was once a member of a dissolved partnership which, in its lifetime, had indorsed a note in the firm name, might, after dissolution, waive demand of payment and notice of non-payment (Darling v. March, 22 Maine, 184); which decision was put upon the principle that, though dissolution revoked all power to make a new contract, it did not revoke the authority to arrange those before created and yet subsisting. And it being so, that the act of one of former partners, in relation to a valid subsisting liability of the late firm, does affect the others, and is taken as their act, and his knowledge thereof as their knowledge, there seems no reason why the refusal of one to pay, on *Page 526 
demand, a note of the partnership, should not be deemed to be the refusal of all, and all be chargeable therewith. And then, a demand of payment made to one, is a demand of payment made to all, and is sufficient upon which to give notice of non-payment to their indorser. And further in aid of this idea, it is to be remembered that the contract of the indorser of the promissory note of a copartnership is, that he will pay if the copartnership does not, while that of the indorser of the note of joint makers is, that he will pay if neither of them does. One joint maker, not a partner of the other, may not be able to speak for the other as to his ability or disposition to protect his promise and to save his indorser from liability, while one partner, though the firm has been dissolved, is supposed to know and care as much as the other of its ability and willingness in those respects. Again, the purpose of demand and notice to the indorser is, that he, being made knowing of the failure to pay by the copartnership, may be put at once on his guard, to save himself, if may be, from loss. This end is achieved when one of former partners has refused to pay, as when all have. Taking all the reasons for the distinction made by the law, between the case of a note of joint makers who are partners, and of that of joint makers who are not partners, and all the reasons for requiring a demand of payment of the maker, and notice thereof and of refusal to the indorser, in order to charge him, we are of the opinion that the rule that a demand of one copartner is sufficient, applies as well where the partnership has been dissolved as where it has not. It follows that the demand of payment in this case was sufficient. We find that this view is sustained in brief opinions in Barry v. Crowley (4 Gill, 194); Brown v.Turner (15 Ala., 832).
It is contended by the appellant that the paper sent to him by mail, intended as a notice of demand and refusal of payment of the note, and of protest therefor, was insufficient for that purpose. It is positive and explicit enough as to the fact of the presentment of the note for payment; as to the *Page 527 
day on which, the place where and the person to whom, the presentment was made; as to the refusal to pay; as to the protest for non-payment against the maker and indorser. The only direct description it gives of the note is, that it was a note of Bassett, Beecher Co., dated May 31, 1870, for $800. It contained the names of the makers of the note, which is the most descriptive feature of a note. So says DENIO, J., in Home Ins.Co. v. Green (19 N.Y., 518). It did not mention the time of payment, otherwise than as it might possibly be inferred from the naming of the day on which it was alleged to have been presented for payment. But the absence of statement of the time of payment, even at the same time with absence of statement of the date and amount, there being no evidence of any other note to which the notice could apply, has been held not a fatal omission. (Shelton v. Braithwaite, 7 Mees. Wels., 436.) So the omission of the date and time of payment was held not fatal. (Youngs v. Lee, 12 N.Y., 551.) Indeed, the rule is no more stringent than that the notice must reasonably apprise the party of the particular paper on which he is sought to be charged, and no precise form is required. (19 N.Y., supra.) A mistake or misdescription of the note will not render the notice insufficient if it do not mislead the indorser, and if it so designates and distinguishes the note as to leave no reasonable doubt in the mind of the indorser what note was intended, and that it was the same with the note in suit. (Gilbert v.Dennis, 3 Metc., 495, per SHAW, Ch. J.) In the absence of any evidence tending to show that the defendant was misled, or was not informed by this notice of what note was referred to in it, or to show that there was any other note of these makers, of this date, for this amount, on which this defendant was an indorser, or to which the description given could by possibility apply, it must be held that it sufficiently conveyed to him information that the note now in suit was the one to which it related. It gave the date, the amount, the names of the makers, and, by inference, the time of payment. If there were other notes, or another note, *Page 528 
with which the one described in the notice could have been confounded, there should have been evidence given of that fact. It is not enough that it was possible that such may have been the fact.
The point is not well taken that the case was not submitted to the jury. The case shows that the appellant informed the court that he did not wish to go to the jury on any question. This means more, in the connection in which it is found, than that he did not wish to address the jury. It means that there is no question of fact upon which there is chance for difference.
The judgment appealed from should be affirmed, with costs.
All concur.
Judgment affirmed.