ELIZABETH ANN SHUTTS, Respondent, *v.* GERMAN FINGAR, Appellant..

No cause of action arises against an indorser of a promissory note payable upon demand, with interest, until after actual demand, and until such demand the statute of limitations does not begin to run as against the indorser.

In order to hold the indorser, however, it must appear that a demand was made of the maker, or if more than one, and the note is not a partnership one, of each of the makers, upon a subsisting obligation; so that the holder upon payment by the indorser may deliver to him the note unimpaired by any act or omission on his part subsequent to the contract of indorsement.

Where, therefore, the holder omits to make a demand until the liability of the maker, or one of several makers, has been discharged by the running of the statute, the indorser is thereby discharged.

*Trimble* v. *Thorne* (16 Johns. 152), *Wells* v. *Mann* (45 N. Y. 327), distinguished.

(Argued October 27, 1885; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made July 2, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought against defendant as indorser of a joint and several promissory note dated March 19, 1866, for $500, payable on demand, with interest, made by Jacob Niver, James Ham and Norman Niver.

Defendant became the owner of the note soon after its execution; he indorsed and transferred it in April, 1868. Plaintiff became the owner in 1869. Interest was regularly paid upon it by Jacob Niver, one of the makers, up to April, 1875. In 1876 said Jacob Niver died. In March, 1877, plaintiff presented the note to the administratrix of the estate of said deceased maker and demanded payment, and on the same day demanded payment of the other makers, which was refused, and defendant was notified of such presentment, demand and non-payment. No demand was made prior to that time. The makers of the note were not copartners.

*John B. Whitbeck* for appellant. Negotiable paper, payable on demand, matures at once, and to hold an indorser, demand and notice must take place within a reasonable time. (*Furman* v. *Huskin*, 2 Caines, 369; *Kendrick* v. *Judah*, 1 Johns. 319; *Losee* v. *Dukin*, 7 id. 70; *Loomis* v. *Pulver*, 9 id. 244; *Sice* v. *Cunningham*, 1 Cow. 397.) Such a note as the one in suit is due forthwith, and the statute begins to run immediately from its date. (*Herrick* v. *Woolverton*, 41 N. Y. 581; *Wheeler* v. *Warner*, 47 id. 518; *DeLavallette* v. *Wendt*, 75 id. 579; *Howland* v. *Edmunds*, 24 id. 307; *Crim* v. *Starkweather*, 88 id. 339.) A bill or note does not lose its negotiable character by being dishonored, and the indorsement, although made after dishonor, follows the nature of the original contract. (*Leavitt* v. *Putnam*, 3 Comst. 494.) In such case the note cannot be presented at maturity by the indorsee, and the contract of the indorser then is to pay on demand of the

maker, his neglect or refusal to pay, and notice to the indorser within a reasonable time after the transfer. It is a note payable on demand. (*Berry* v. *Robinson*, 9 Johns. 121; *Van Hoesen* v. *Van Alstyne*, 3 Wend. 75; *Grant* v. *Strutzel*, 36 Am. Cas. 250; *Thielman* v. *Greble*, id. 267.) Upon a promissory note, payable on demand, the statute of limitations begins to run from the date and not from the time of the demand of payment. (*Hirst* v. *Brooks*, 50 Barb. 334; Edwards on Bills and Notes [3d ed.], § 774; *Bartholomew* v. *Seaman*, 25 Hun, 69.)

*Samuel Edwards* for respondent. The note was a continuing security, from which the defendant, as indorser, was not discharged by reason of the omission of the plaintiff to make an earlier demand. (*Merritt* v. *Todd*, 23 N. Y. 28; *Payne* v. *Gardiner*, 29 id. 146; *Herrick* v. *Woolverton*, 41 id. 587; *Pardee* v. *Fish*, 60 id. 265; *Parker* v. *Stroud*, 98 id. 379.)

RUGER, Ch. J. We think the court below erred in applying the doctrine of *Merritt* v. *Todd* (23 N. Y. 29) to the facts of this case, and that its true solution is to be found in the rules prescribing the duties and obligations of a creditor to his surety. This court, in the case of *Parker* v. *Stroud* (98 N. Y. 379), following *Merritt* v. *Todd*, expressly reserved from the effect of the decision, the question as to the liability of the indorser, when the maker had been released from liability, by the *laches* of the holder. The doctrine of *Merritt* v. *Todd* has been so long acquiesced in, and has been followed and approved in so many cases, that it would be impolitic now to permit the rule there laid down to be questioned or disturbed, and it must, therefore, be considered as settled law in this State that a note payable on demand, with interest, is a continuing security, and no cause of action arises thereon against an indorser until after actual demand.

The defendant is here sued as indorser of a demand note, dated March 19, 1866, made by Jacob Niver, James Ham and Norman Niver, payable, with interest, to Francis O'Coner or bearer. The defendant afterward became the owner and

holder of the note, and in April, 1868, transferred it to one Potts, and at the request of Potts then indorsed it. Potts held the note about one year, when he sold it to the plaintiff, who has ever since remained its owner. Jacob Niver paid interest on the note annually until March, 1875, since when no payments have been made thereon. Jacob Niver died in 1876, and administrators of his estate were then appointed. In March, 1877, the plaintiff, after demanding payment of the note of the makers, James Ham and Norman Niver, and also of the personal representatives of Jacob Niver, and failing to collect it, notified the defendant of the fact and of his intention to hold him for its payment, and thereupon commenced this action in June, 1878.

The authorities now uniformly hold that the statute commences to run, upon a note payable on demand, in favor of the maker, at its date (*Herrick* v. *Woolverton*, 41 N. Y. 481; *Wheeler* v. *Warner*, 47 id. 519; *Parker* v. *Stroud*, 98 id. 379), and that the expiration of six years from such date constitutes a bar to an action thereon unless a renewal of the cause of action has been effected by partial payments or otherwise. The makers in this case were not partners, and occupied no such relation to each other as constituted the party making payment, in any sense, the agent of the other for such purpose, and it necessarily follows that the payments made by Jacob Niver did not renew the note as to the other makers, and they were, therefore, discharged from liability thereon, several years prior to any demand of payment from them. (*VanKeuren* v. *Parmelee*, 2 N. Y. 524; *Schoemaker* v. *Benedict*, 11 id. 176.)

It must also be conceded upon settled principles of law, that defendant, after payment of the note, would have no recourse for indemnity against any of the parties thereto, except upon the note itself, and if any of such parties were relieved from liability thereon, either by the act, or *laches* of the holder, the indorser lost his right of action against such party. The rule which, upon payment of a note, implies a promise by the maker to repay to the indorser the amount paid by him, proceeds upon the theory that the payment has been made at the request of

the maker, and the cause of action arising in favor of the indorser, is based upon the act of payment, and not upon the note. (Brandt on Suretyship and Guaranty, §§ 176, 179.) Where, however, commercial paper is indorsed after its execution, to subserve the interests of the indorser, no such promise of repayment can be implied, and the only remedy for indemnity, from the prior parties is by resorting to the paper itself. (Brandt on Suretyship and Guaranty, § 180.) Upon payment of such obligation, an indorser is entitled to demand its possession from the creditor, with the right of subrogation, to all securities and remedies possessed by him against the prior parties thereon, unimpaired by any act or *laches* of such creditor. (*Goodyear* v. *Watson*, 14 Barb. 481; *Clason* v. *Morris*, 10 Johns. 524; *Beardsley* v. *Warner*, 6 Wend. 613; Daniels on Neg. Inst., § 1306; *Townsend* v. *Whitney*, 75 N. Y. 432.)

The obligation which a party assumes upon indorsing a note is, among other things, to pay it, in case the parties primarily liable thereon, after demand, neglect or refuse to do so. The demand stipulated for is an essential part of the indorser's contract, and the same considerations which induce its requirement, also require that it shall be made upon an existing cause of action, and of parties who are legally liable to respond in damages for its non-performance. (Daniels on Neg. Inst., § 1308.) The contract, except in the case of parties originally incompetent to contract, is predicated upon the assumption that there is a legal liability against parties, upon whom the demand is to be made. A demand upon a party after he has ceased to be liable would be an idle ceremony and a fraud upon the meaning and spirit of the indorser's contract.

Except in the case of a partnership note, the demand must also be made upon each of the several makers at the maturity of the note. (*Gates* v. *Beecher*, 60 N. Y. 518. It would be quite absurd to claim that a note could mature after the parties thereto had been discharged by the expiration of the period of limitation, and a demand upon such parties, after the bar of the statute had fallen, would not, therefore, be a compliance

with the conditions of the indorser's liability. It was held in the case of an indorser of a note secured by mortgage upon real estate, the lien of which was lost by the neglect of the creditor to record it, that the surety was discharged, the court saying that it worked a change in the terms of the surety's undertaking. " He only guarantees the note as secured by the mortgage, and when the mortgage was destroyed his contract was no longer existent." (*Atlanta Nat. Bk.* v. *Douglass,* 51 Ga. 205.)

From the foregoing considerations it would seem to follow that, in order to sustain the contention of the respondent, we would be required to hold that an indorser remains liable upon a note, after his principals have been discharged from their obligation upon it, and that his right of subrogation entitles him only, to the possession of a security rendered worthless by the neglect of the creditor. Where such consequences are produced by the direct action of the creditor all of the authorities concur in holding that it constitutes a good defense to the indorser, and it is difficult to see why the same consequences produced by the deliberate *laches* and inaction of the creditor should not lead to the same result.

There are cases holding that an indorser is not discharged by the delay of the holder in prosecuting the maker, at a time when the debt could be collected from him, and such remedy has become fruitless by the maker's subsequent insolvency. (*Trimble* v. *Thorne,* 16 Johns. 152; *Wells* v. *Mann,* 45 N. Y. 327.) These cases proceed upon the theory that it is the privilege and duty of the indorser, after receiving notice of dishonor, to pay the note and enforce it himself, if he fears the impairment of the maker's solvency through lapse of time. We have, however, been unable to find any case holding that an indorser can be made liable who has had no notice of dishonor, or opportunity to take up the note, where the liability of the maker has been discharged by the *laches* of the holder in allowing the period of limitation to run thereon.

The responsibility of the indorser for the loss occasioned by the bankruptcy of a maker, after the maturity of a note, is put

upon him because of the opportunity which is afforded him of protecting himself, and when he is deprived of this opportunity by the neglect of the holder, we know of no principle of law which will hold him liable for the consequences of such a loss.

It is a general rule that whatever discharges the maker or acceptor of a bill or note discharges the drawer and indorser, who are sureties, for the contract which they undertook to assume thus passes out of existence by the act of the beneficiary. (Daniels on Neg. Inst., § 1306.) It is also said that " whatever discharges a prior indorser discharges all subsequent indorsers, for the reason that he stood between them and the holder, and on making payment each one could have had recourse against him but from which his discharge precludes them." The contracts of the parties to a note are said to be like the links of a pendant chain, if the holder dissolves the first every link falls with it. (Daniels on Neg. Inst., § 1307.)

It was held in the case of *Beardsley* v. *Warner* (*supra*), that if the creditor does any act impairing the surety's claim against the maker it may be shown in defense of the surety. *Barhydt* v. *Ellis* (45 N. Y. 111) holds that where, by the *laches* of the creditor, the surety's means of indeminity are impaired, his liability is discharged to the extent of the loss sustained by reason of such neglect. The necessary implication from the rule thus laid down would seem to require his absolute discharge when the responsibility of an individual liable for the whole debt has been lost by the act of the creditor.

It is among the fundamental rules applicable to the relations of principal and surety that a creditor cannot vary or change the contract to the prejudice of a surety ; that he cannot extend the time of its performance, or release any security held therefor, or discharge any party therefrom, without thereby releasing the surety wholly or partially from his obligation. (Daniels on Neg. Inst., § 1308.) In *Stewart* v. *Eden* (2 Caines, 121), it was held where the holder released one of the makers of a note, reserving, however, his liability to the indorsers, that such release did not discharge the indorsers. But it was then con-

ceded that if the release had operated to wholly discharge such maker it would have been otherwise.

While there are some qualifications of the general rules above referred to, there are none that I have been able to find excusing a creditor, for allowing the statute to run in favor of the principals, upon a note by which they are discharged from liability. The general rule applicable to such *laches* seems to be well stated in the case of *Reese* v. *Barrington* (2 Lead. Cas. in Eq., part 2, p. 373, cited in the note to Fell's Law of Guaranty and Suretyship, 217). " But although the creditor is not bound to take active measures to enforce payment of the debt, and may, therefore, stop short in those which he has taken, even when their further prosecution would have been successful, yet he is not entitled to relinquish any hold which he has actually acquired on the property or estate of the principal and which might have been made effectual for the payment of the debt. This is the necessary result of the rule that a creditor shall not arbitrarily shift the burden of a debt from the party primarily liable for its payment and impose it on another whose liability is secondary."

We are, therefore, of the opinion that an indorser cannot be held upon a note payable on demand with interest, unless the holder can show a demand made of the makers upon a subsisting obligation against all of the parties thereto, and be able to deliver to such indorser upon payment by him the note, unimpaired as an obligation by any act or omission of the holder occurring subsequent to the contract of indorsement.

The judgment of the court below should be reversed and a new trial ordered, with costs to abide event.

All concur.

Judgment reversed.