SAMUEL H. HURD as Receiver* of the Third Avenue Savings Bank, Respondent, v. SPENCER K. GREEN, Appellant.

*Bond — what a sufficient consideration therefor — when a party is liable on a bond given to strengthen a bank.*

December 31, 1873, the defendant executed to the Third Avenue Savings Bank a bond under seal, by which "in consideration that the Third Avenue Savings Bank at my (his) request does continue its ordinary business, after the 19th day of January, 1874," he bound himself to pay to the said bank, "its successors and assigns, on the first day of January, 1883, or six months after demand therefor, the sum of $15,000." The defendant at the time of executing the bond was, and from its organization had been, a trustee of the bank, and continued to be one until the bank was dissolved and the plaintiff was appointed receiver in 1875. At the time the bond was given the bank was in embar-

---

* SAMUEL H. HURD, as Receiver of the THIRD AVENUE SAVINGS BANK, Respondent, v. RICHARD KELLY, Appellant, and THE SAME v. DANIEL D. T. MARSHALL, Appellant. Decided at the same term.

"Ingalls, J. :

"We refer to the opinion in the cause *Samuel H. Hurd, receiver, etc., v. Spencer K. Green*, in which most of the questions presented upon the appeals in the above actions are discussed. The three appeals were argued together, and the questions raised are mainly identical. Requests were made in the above actions by the counsel for the defendants that certain questions should be submitted to the consideration of the jury, which were declined by the court. An examination of such requests, in connection with the evidence and the law applicable thereto,

rassed circumstances, and its capital was seriously impaired. In an action brought by the receiver upon the bond, *held,*

(1.) That the seal was *prima facie* evidence of a sufficient consideration to support the bond.

(2.) That the fact that the bank at the defendant's request continued in business, was a sufficient consideration to support it.

(3.) That the defendant could not claim that the action of the bank in taking the bond was *ultra vires* and void.

(4.) That the action was not prematurely brought, as the bond became due six months after a demand made, and did not necessarily run until 1883.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed at the circuit, and from an order denying a motion for a new trial.

*Robert Sewell,* for the appellant.

*Frederick Smythe* and *A. J. Vanderpoel,* for the respondent.

convinces us that the decision at the circuit was correct. (*West. N. Y. L. Ins. Co.* v. *Clinton,* 66 N. Y., 327; *Dair* v. *United States,* 16 Wall [U. S.], 1; *Magee* v. *M. L. Ins. Co.,* 92 U. S. Rep., 93.) The bond in question, although by its terms payable to the bank, was in fact intended for the benefit and protection of all persons who dealt with the bank. The bond was reported to the bank department as an asset, and constituted a part of the property of the bank, and enabled it to continue its ordinary business, thereby inducing innocent parties to deposit their money therein. The execution and delivery of such bond cannot, therefore, be regarded as a transaction affecting merely the bank and those who executed the instrument; but as extending to all persons who in the capacity of depositors or otherwise transacted business with it upon the assumption that it was solvent. They were justified in regarding such bond a valid obligation, which contributed to the strength of the bank; and as nothing appeared upon the face of the bond to excite suspicion they were not concluded by any private negotiations between the officers of the bank and the parties who executed the bond. In view of all the facts of this case, and the relation which the defendants bore to the bank, it would be unreasonable and unjust to allow them to escape liability upon the pretence that they were not informed in regard to the pecuniary condition of the bank, or upon the ground that false representations were made in relation thereto, when it is apparent that they had every opportunity to examine and ascertain the facts; and there is no evidence that they availed themselves of such privilege. If parties will voluntarily assume such liabilities they should not be permitted upon slight grounds to avoid the consequences, to the prejudice of innocent persons. The judgments should be affirmed, with costs."

BRADY, J., concurred.

Present — DAVIS, P. J., BRADY and INGALLS, JJ.

Judgment affirmed, with costs.

INGALLS, J. :

This action was brought to recover upon a bond hereinafter set forth. At the close of the plaintiff's evidence the defendant's counsel moved the court to dismiss the complaint, or to direct a verdict for the defendant upon the following grounds :

First. That it appeared by the evidence that there was no consideration given for the bond.

Second. That the bank had no power to enter into such a contract, and the bond was *ultra vires* and void.

Third. That the bond was contrary to the statute against gaming and betting and void.

Fourth. That by the terms of the bond it appeared that it was not yet due.

Which motion was denied by the court upon each of the grounds aforesaid, and to which ruling of the court the defendant's counsel duly excepted.

The defendant's counsel then moved the court for leave to go to the jury on the question of consideration or no consideration for the bond, and also moved the court to submit the question of the defendant's right to recover salary for the six months' service in 1871, proven to have been rendered, to the jury.

Both of which motions the court denied, and the defendant's counsel duly excepted in time to the denial of each of said motions.

The court then directed the jury to return a verdict for the plaintiff for the sum of $19,161.08. To which direction of the court, and to the verdict rendered thereunder, the defendant's counsel duly excepted in time.

The following is a copy of the bond before mentioned :

Know all men by these presents : That I, Spencer K. Green of the city, county and State of New York, in consideration that the Third Avenue Savings Bank, *at my request*, does continue its ordinary business after the 19th day of January, 1874, do hereby bind myself, my heirs, executors and administrators, to pay unto the Third Avenue Savings Bank, its successors or assigns, on the 1st day of January, 1883, or six months after demand therefor, the sum of $15,000, with interest from the 1st day of January, 1873, at seven per cent per annum, payable on the first days of January and July. And I expressly agree that the payments

made on account of either the principal or interest of this bond shall not be claims against the said savings bank, nor constitute a debt of the said savings bank, except, however, that all payments so made shall be returned with interest by the said savings bank, out of any actual surplus acquired by it exceeding the sum of $115,000.

And the said Third Avenue Savings Bank does receive this bond upon the terms and conditions herein expressed, and further agrees that whenever an actual surplus exceeding the amount of $57,500 shall have been acquired by it, then the rate of interest upon the sum secured by this bond shall be reduced to such extent as shall not impair such surplus, and that interest shall be allowed and paid by it upon all sums of money actually paid on account of the principal sum secured hereby.

And the said savings bank does further agree that whenever the actual surplus acquired by it shall amount to the sum of $10,000, exclusive of this bond and of a certain other bond dated 28th December, 1872, made by William A. Darling and others, then this bond shall be discharged and the obligor thereof be forever released therefrom.

In witness whereof I have hereunto set my hand and seal, and the said savings bank has hereunto affixed its corporate seal, and caused these presents to be attested by its officers this 31st day of December, in the year one thousand eight hundred and seventy-three.

[L. S.]          (Signed.)          SPENCER K. GREEN.
                                    T. W. DECKER, *President.*

[L. S.]          DAVID MORGAN,
                                    *Secretary.*

In presence of Henry C. Weeks.

The defendant's counsel moved for a new trial upon the minutes of the judge, which was denied and an exception taken to the decision. We are satisfied that the consideration established is sufficient to sustain the bond. First. The seal imports a consideration, and even since the modification of the rule, in this respect, at common law by the Revised Statutes (Edm. ed., vol. 2, p. 423, § 77), it is at least presumptive evidence of a sufficient consideration. (*Torry*

v. *Black*, 58 N. Y., 186; *Gray* v. *Barton*, 55 id., 69; *Petrie* v. *Barckley*, 47 id., 653; *Calkins* v. *Long*, 22 Barb., 98.) Second. The bond states as a consideration, *a request to the bank* to continue its ordinary business after the 19th day of January, 1874, as follows : " In consideration that the Third Avenue Savings Bank *at my request* does continue its ordinary business after the 19th day of January, 1874, do hereby bind myself," etc. The bank did continue such business after that period and until the 4th day of October, 1875, when it was dissolved by order of the court. It is insisted by the defendant that when he executed the bond he was not aware that the bank was embarrassed, and further that it did not change its course of business in consequence of such request, and therefore the request did not amount to any actual consideration. It may be well to examine some of the facts bearing upon this question in this connection. The defendant had been a trustee of this bank from its organization until its dissolution, and was its president until July 15, 1871, and claims to have been daily in attendance at the bank in the discharge of his duties as such president much of the time up to that date. It appears by the report of a committee, which was appointed by the trustees to investigate and report in regard to the condition of the bank, that its capital was seriously impaired as early as December 12, 1872, such report contains the following : " These statements demonstrate the fact that the apparent surplus exhibited by the December statement is entirely deceptive, and that under the most prudent management undisturbed by any untoward action of the depositors, the board cannot reasonably expect to realize from the present assets of the bank sufficient to meet its present liabilities, and that the deficiency in this respect amounts to very nearly the sum of $100,000.

" This, it will be remembered, is the deficit under a favorable realization of the assets. The last column of the table shows what may be expected if the assets of the bank are forced to a peremptory sale by the action, either of the board or of the depositors. In this case the deficiency of the assets of the bank would be upwards of $250,000.

" The present position of the bank in regard to its ability to meet its payment of interest and expenses from its income for the

coming year is equally unfortunate. The annexed table exhibits the total income which the bank can reasonably expect for the year 1873, on the basis of its present deposit, as the sum of $84,554. This sum, however, would be increased to $94,214, if the Tarrytown property could be at once converted into cash, or paying investments. The payments of the bank for the next year for interest and expenses, estimated also on the basis of the present deposit, are shown to be $99,930. Thus the deficiency of income will be from $5,700 to $14,500, according as the Tarrytown property is realized or not.

" This then is the actual position of the bank, the disasters of the past *have crippled the institution*, and it becomes the action of the present managers to save it if they can. Many of us have come into the bank with a view of aiding in the good work, if we can, and others until now have faithfully stood by the ship, while those chiefly responsible for the wreck have left. Hitherto we have acted with the direct approval of the superintendent of banking, and now again we should seek his approval of whatever action we propose taking.

" What then remains to be done ? We have said that an actual deficit of $100,000 exists ; that the position is constantly growing worse from the deficiency of income, and that if the bank were to-day forced into liquidation, a loss of upwards of $250,000, or fifteen per cent, would be thrown on the depositors ; in fact, in the case of actual suspension and the inevitable liquidation in the bankruptcy court, the necessary sacrifices and expenses would so diminish the volume of the assets that the percentage of loss to the depositors would be largely increased."

This report was on file in the bank and showed its condition, and plainly pointed out the course which should be pursued to preserve the bank, which was adopted by the trustees, and the bonds were executed accordingly, the first amounting to $100,000 on the 28th day of December, 1872, by fourteen individuals, and the one in question executed by the defendant, which bears date December 31, 1873. The defendant testified that he gave the bond *to strengthen the bank*, and was aware at the time that the bond for $100,000 had been executed, but did not know for what purpose, nor did he know that the assets were less than the lia-

bilities. It is certainly very remarkable, in view of all the circumstances, that the defendant could be so ignorant of the condition of the bank, possessing, as he obviously did, every opportunity to acquire information in relation thereto. It does appear by his own evidence that he not only knew that the bond for $100,000 had been executed, but that prior to 1871 the officers relinquished a portion of their salaries in consequence of the condition of the bank at that time. It seems incredible that a person of ordinary intelligence should not have inferred that a bank which required bracing to the extent of $115,000 was not in a sound condition, and the evidence of the defendant shows clearly that he was possessed of a knowledge of facts which should have put him upon inquiry in regard to the solvency of the institution before he executed the bond in question. We think no inference can reasonably be drawn from all the circumstances but that the defendant, and the parties who executed the other bond, knew that the bank was crippled and required support, and that they executed the bonds hoping thereby to prevent its failure. These bonds amounting to $115,000 were reported to the bank department as assets in the years 1874 and 1875. The defendant testified as follows : " From the time I gave the bond the bank continued open ; it received deposits and transacted its ordinary business ; I ceased to be president July 15, 1871 ; I continued to be a trustee down to the time of the bank stopping ; I was elected as a trustee first in 1856, or 1857, or 1858, I cannot tell which ; and at the time of my election as president I was a trustee, and always continued to be a trustee up to the time of the dissolution of the bank."

The bank was thus enabled to continue its business, and the depositors entrusted their money to it, upon the assumption that it was a sound institution, and therefore the request of the defendant expressed in his bond as *a consideration* for his undertaking was realized, and cannot be regarded as mere matter of form. *In the Trustees of Hamilton College* v. *Stewart* (1 N. Y., 581), Judge GARDNER remarks at page 583 : " In looking at the contract, however, we meet with the same difficulty, in another form to which I have alluded in reference to the first count in the declaration. There is *no request* by the subscribers that the plaintiffs shall do anything. * * * The trustees are

made by the subscription the mere depositories of the money, and nothing more. * * * If, with C. J. NELSON, we find that the defendant agreed to pay $800, provided the plaintiffs would procure subscriptions, and should afterwards invest the money, etc., this, according to the cases, would amount *to a request to perform those services, and the defendant would be liable.*" (*Richmondville U. Seminary* v. *McDonald,* 34 N. Y., 379; *Barnes* v. *Perrine,* 12 N. Y., 29.) Within the doctrine of these cases, *the request* contained in the defendant's bond, acted upon as it was by the bank, and thereby preserving its credit, and inducing innocent persons to deposit money, and transact other business with it, upon the assumption that it was sound and reliable, certainly constituted a consideration sufficient to uphold the bond. The law does not require that the consideration shall be commensurate with the magnitude of the obligation to render a contract binding. In *Oakley* v. *Boorman* (21 Wend., 588), Judge COWEN says: " Almost every bargain is incapable of being made exactly equal on both sides, * * * hence the law has declared that the slightest consideration is sufficient for the greatest undertaking." (*Barnes* v. *Perrine, supra; Earl* v. *Peck,* 64 N. Y., 597; *Sands* v. *Crooke,* 46 id., 564; *Haden* v. *Buddensick,* 4 Hun, 649.)

Third. There are reciprocal agreements contained in the bond, and those of one party constitute a consideration for those of the other. The bond is complete in itself, and is executed by all the persons whose names appear in the body of the bond as parties thereto ; and the obligation of the defendant is personal for a specific amount, and not made by the terms of the instrument to depend upon whether or not other parties were to assume a similar liability. (*Richmondville U. Seminary* v. *McDonald,* 34 N. Y., 379, 382; *W. N. Y. L. Ins. Co.* v. *Clinton et al.,* 66 id., 326.) It is further insisted that the bank had no power to enter into such contract, and being *ultra vires* the bond is void.

Since corporations have become so universal, extending to almost every department of business, science and benevolence, the application of this doctrine to contracts made by, or with, corporations has latterly essentially changed, and a far more liberal rule is now indulged in regard to such contracts than formerly ; and necessarily so to prevent fraud and injustice.

Indeed, the rule seems so far relaxed that when the contract is not tainted by fraud, or expressly prohibited by statute, and has been fully or even partially executed so that it would be unjust to allow a repudiation thereof by either party, such defence will not be sustained by the courts. In *Whitney Arms Co.* v. *Barlow* (63 N. Y., 63), Judge ALLEN remarks: "The plea of *ultra vires* should not as a general rule prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong." In *Railway Co.* v. *McCarthy* (96 U. S., 6 Otto, 258), Judge SWAYNE says: "The doctrine of *ultra vires* when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." (*Bissell* v. *The M. S. and N. I. R. R. Co.*, 22 N. Y., 258; *The Oneida Bank* v. *Ontario Bank*, 21 id., 490; *Tracy* v. *Talmage*, 14 id., 162; *Steam N. Co.* v. *Weed*, 17 Barb., 378.) The defendant executed the bond in question voluntarily, and either knew or had the means of knowing, and, therefore, should have known, the condition of the bank and the purpose for which such security was required, and innocent parties, having trusted the bank upon the faith of such security, should not be subjected to loss by allowing the defendant to escape liability through such a defence, as it would be inequitable and grossly unjust.

It is further contended by the defendant that the bond will not become payable by its terms until January 1, 1883, and that the action was, therefore, prematurely commenced. The language employed is as follows: "To pay unto the Third Avenue Savings Bank, its successors or assigns, on the 1st day of January, one thousand eight hundred and eighty-three (1883), or six months after demand therefor." Regarding the purpose for which the bond was given, we conclude that the intention was to make it payable on the 1st day of January, 1883, or at any time previous thereto, after the expiration of six months from a demand of payment. The bond was executed to provide for any emergency which might arise in regard to the bank, and it is not reasonable to suppose that the bond was not to be resorted to until 1883. A demand of payment would seem quite unnecessary after the money had become due by the terms of the bond. We think the

interpretation which we have given to the instrument is consistent with its terms, and is in accordance with the intention of the parties.

It is claimed that the bond is void within the provisions of the statute against betting and gaming; we fail to discover wherein it is obnoxious to such statute.

In regard to the counter-claim for salary as president of the bank, from January 1 to July 15, 1871, after a careful examination of the evidence, we deem it not allowable, as it is quite apparent that at the time there was no intention on the part of the defendant to demand the same; on the contrary, it is quite evident that owing to the condition of the bank there was an understanding that it should be relinquished. The evidence of the defendant is not inconsistent with such view of the matter. He testifies on that subject as follows, viz.: "As president of this bank, I served from the 1st of January, 1871, to the 1st of July, 1871; I think I served to the middle of July; I am not certain; I was not paid anything for that six months' service; I had been paid for all my services as president prior thereto; I cannot state what I had received for the years prior to 1870; *I can only give my impression that it was about $6,000*; I attended the bank daily during those six months in 1871; I had prior to 1871, in consequence of the condition of the bank, agreed to relinquish a portion of my salary, one or two years previously; I don't recollect which; I don't recollect how much I had relinquished; it appears by the minutes I did not receive any salary whatever for the year 1871."

William B. Harrison, another of the trustees, testified as follows: "There was a meeting of the trustees of the bank at the time that the bond was acknowledged in the bank and delivered to the secretary of the bank; Mr. Green was present at the time and saw it done; there was some alteration made in the bond upon that occasion, at the suggestion of Mr. Green; I think I remained a trustee of the bank until it suspended, at least nominally; I was not there very much the last year or two; I cannot tell you, as a matter of fact, whether there were any salaries paid to any of the officers of the bank, excepting employees, from 1871 down to the time of the failure; but I think most of the officers relinquished their salaries for quite a period before the failure of the bank; I think the relinquishment commenced about 1871; there was some

resolution passed with reference to it, I believe ; from 1871 down to the time of the dissolution of the bank it received deposits and paid depositors, and did the ordinary business of a savings bank ; there were new accounts made from time to time, and there were clerks and book-keepers employed and salaries paid to them by the bank, and other incidental expenses necessary to carry on the bank were paid ; they made their regular semi-annual reports, I believe, as required by law."

The recollection of the defendant was quite indistinct in regard to the amount which he had received, and in relation to the relinquishment of a portion of his salary. Again it does not appear that he made any demand for the balance of the salary prior to the commencement of the action, a delay of about six years, which, while it might not have the effect to bar the claim, it certainly greatly strengthens the presumption that it was relinquished, as the plaintiff contends. Again the value of the defendant's services was not shown ; nor does the evidence establish the amount of salary which he did receive, with a precision which would have enabled the jury to have rendered a verdict in his favor, if the cause had been submitted to their consideration. As we have before remarked, the defendant was unable to state with any degree of certainty the salary which he received. The counter-claim has the appearance of an experiment, rather than the assertion of a *bona fide* debt against the bank. Under the circumstances we are convinced that the defendant failed to establish a state of facts which entitled him to the allowance of such claim, or even to require a submission of the case to the jury. He should be required to seek compensation with the other creditors out of the fund in the hands of the receiver, if he can strengthen the evidence in support of his claim sufficiently to entitle him thereto. We conclude therefore that the judgment should be affirmed, with costs.

Brady, J., concurred.

Present — Davis, P. J., Brady and Ingalls, JJ.

Judgment affirmed, with costs.