## TOWNSEND *vs.* OLIN.

An officer who has returned on a *capias ad satisfaciendum* that he has *received the amount of the execution* in full, will not be allowed to impeach the return by shewing that what he received were *notes,* and that they were taken, *not* in payment of the execution, but for his indemnity against a threatened prosecution for an escape.

Where *notes* were thus taken by an officer, and a return as above made on the execution, and such notes were subsequently demanded by the plaintiff, *it was held* that the demand was a ratification of the act of the officer, and that the plaintiff was entitled to recover against him in an action of *assumpsit* on the *money counts.*

THIS was an action of *assumpsit,* tried at the Allegany circuit in May, 1828, before the Hon JOHN BIRDSALL, one of the circuit judges.

The declaration contained the common money counts. The plaintiff produced exemplifications of two judgments in

his favor against Joseph Wilson, one for $134,16, and the other for $135,87, and exemplifications of two writs of *capias ad satisfaciendum* issued on the same, on each of which appeared a *return*, signed by the defendant as one of the coroners of the county of Allegany, in these words : " Received in full the amount of the within *ca. sa.* and my fees, pursuant to the special direction of the plaintiff." Wilson, the defendant in the executions, was arrested by the coroner in August, 1825; the plaintiff was present, and agreed to accept a certain note in payment after ascertaining the responcibility of the maker, engaging to meet Wilson at his farm on the next day and consummate the agreement. Afterwards, on the day of the arrest, the plaintiff saw the coroner, Wilson not being with him, charged him with having suffered Wilson to escape, and told him he would hold him responsible. On the day after the arrest, the parties met at Wilson's farm, when the plaintiff refused to take the notes, saying that the coroner had permitted an escape, and that he would look to him for the same. Wilson thereupon delivered to the coroner one note for $190, payable in January then next, and another note for the balance of the executions and the coroner's fees, payable in one year, signed by himself and another person. In May, 1827, the plaintiff demanded of the coroner the notes received by him, or the money directed to be levied on the executions; which demand was not complied with. Upon these facts, the plaintiff claimed to recover. The defendant moved that the plaintiff be nonsuited, insisting that he was not entitled to recover on the common counts without shewing money or its equivalent actually received by the defendant for the plaintiff; that the notes, having been received by the defendant for his indemnity, did not authorize the plaintiff to recover in an action of assumpsit; and that if the plaintiff was entitled to recover, the action should have been *trover* and not *assumpsit*. The judge refused to nonsuit the plaintiff. The defendant then offered to prove that the notes were not received by him in payment of the executions, or for the use of the plaintiff, but were taken by him for his own indemnity against the threatened prosecution of the plaintiff for the escape of Wilson; that previous to May,

1827, the notes were tendered to the plaintiff, and the maker of the $190 note offered to pay the amount thereof to him, and that the plaintiff refused to receive the notes or money, alleging that the defendant had made himself liable for an escape, and that he should look to him alone for the money on his executions; that subsequent to such offer and refusal, and previous to May, 1827, Wilson demanded the notes of the defendant, and on such demand they were re-delivered to him; which evidence was refused to be received by the judge, and the plaintiff obtained a verdict for $322,50. A motion was now made to set aside the verdict.

*J. A. Spencer,* for defendant.

*M. T. Reynolds,* for plaintiff.

*By the Court,* MARCY, J.   The special directions of the plaintiff, alluded to in the returns, must be considered as referring to the negotiation as to taking notes in satisfaction of the executions, and not to the ordinary instructions to the officer endorsed on a *ca. sa.*   The arrangement to receive the notes was broken off, and though they were received, it is contended by the defendant they were not received in pursuance of the arrangement, or in satisfaction of the executions, but for his indemnity for the escape.

The evidence offered by the defendant, the rejection of which he now complains of, went to impeach his *returns* made under his oath of office, which returns he cannot be permitted to gainsay.   By them he acknowledged that he had received the amount of the executions.   It was not for him, when sought to be charged on those returns, to turn round and say, they are not true; what I received was not on the executions, but to indemnify myself against a threatened prosecution for an escape.   Though, however, the defendant is concluded by the returns, the plaintiff is not; he may shew that what is contained in the returns, as to the satisfaction being in a particular mode by his direction, is not correct.   The plaintiff did not direct the notes to be taken by the defendant.   The taking of them did not therefore, *per se,* discharge the executions; but if the plaintiff has sub-

sequently ratified that act, Wilson was thereby discharged from the judgments. *Armstrong* v. *Garrow*, 6 *Cowen*, 465.

There are some features in this case which distinguish it from that of *Armstrong* v. *Garrow.* Here was an express refusal, on the part of the plaintiff, to ratify the act of the defendant in taking the notes in satisfaction of the executions, and a declared intention of proceeding against the defendant for an escape, although afterwards the plaintiff changed his views and demanded the notes.

The defendant offered to prove, that after the refusal of the plaintiff to receive the notes, and previous to his demand of them, Wilson had demanded them, and they had been re-delivered to him. How would this evidence, if it had been received, leave the parties? If the defendant is not permitted to shew, and in my opinion he is not, that the notes were received in a manner and for objects different from those stated in his return, it will not appear that Wilson had any right to demand and receive the notes, and the defendant could not affect the rights of the plaintiff by giving them up. If the defendant had improperly disposed of the notes before the plaintiff offered to receive them, the effect of that offer is the same as if he still retained them. It was, in my opinion, ratifying the act of the defendant in receiving them; and if so, this case is brought within the authority of the case of *Armstrong* v. *Garrow.*

The *returns* shew that the defendant received the amount of the executions. If it was in *money*, he is liable in this action; if it was in *notes*, as the proof in this case shews, then the authority of *Floyd* v. *Day*, 3 *Mass. Rep.* 403, establishes that *assumpsit*, and not *trover*, is the proper form of action. The case would be different, had it appeared that the plaintiff had agreed that the notes might be taken, and had directed what notes should be received. In that case the coroner would have acted, in taking the notes, not in his official character, but as the agent of the defendant. It was not proved, otherwise than by the return, (which was contradicted,) that the defendant received the notes by the plaintiff's direction, nor was that fact offered to be proved.

Motion for a new trial denied.