## N. Y. COMMON PLEAS.

### Ansonia Brass Company agt. William C. Conner, Sheriff, etc.

*Sheriff — Liability of, for not returning execution — Sheriff's return not conclusive as to amount collected — Appeal — When and how interlocutory judgment reviewable — Failure of proof as to plaintiff being a corporation — Time to make objections as to.*

Where, in an action against the sheriff for damages for neglecting to return an execution within sixty days, the court, upon the trial, gave an interlocutory judgment in favor of the plaintiff on the pleadings, and sent the cause to another branch of the court that the plaintiff's damages might be assessed:

Ansonia Brass Company agt. Conner.

*Held* (reversing judgment for plaintiff), 1. That the interlocutory judgment is reviewable upon this appeal, notwithstanding the defendant, in his notice of appeal, did not mention the interlocutory order, because the Code which was then in force did not require any such specification to review interlocutory judgments or intermediate orders.

2. As the complaint, which alleged that the plaintiff "is a corporation duly created and existing, doing business in the city of New York," did not aver that the plaintiff was a corporation created under a statute of New York, and the answer put in issue the existence of the corporation, proof should have been given of the corporate character of the plaintiff.

3. The allegation of the complaint that the plaintiff had recovered a judgment against one Wilson being denied by the answer, and the fact being essential to the existence of the cause of action, the court erred in directing judgment on the pleadings.

DALY, C. J. (dissenting), holds: 1. That as it appeared the sheriff on receiving the execution levied on the property of defendant, and all proceedings were stayed five days thereafter, and that after the stay was removed he had a month and twelve days before the sixty days expired, that was ample time within which to sell the personal property levied upon and make his return; and for failure to do so he was liable to plaintiff.

2. The sheriff's return is not conclusive as to the amount collected.

3. The time to make objection as to failure of proof that plaintiff was a corporation and that the execution was founded upon a valid judgment, was when the motion was made for judgment upon the pleadings.

*General Term, May,* 1881.

*Before* DALY, *Ch. J.,* VAN HOESEN and J. F. DALY, *JJ.*

VAN HOESEN, *J.* — The complaint alleges that the plaintiff is a " corporation duly created and existing, doing business in the city of New York." The answer denies any knowledge or information sufficient to form a belief as to the truth of that allegation. Whether or not the plaintiff was bound to offer any proof as to its corporate character depends upon the question as to whether it was a domestic corporation created under a statute of this state. If the plaintiff be a corporation created under a statute of this state it was unnecessary, under the pleadings as they stood, to introduce any evidence of its charter; but if the plaintiff is a corporation created by the law of any other state or country, it was bound to prove that

Ansonia Brass Company agt. Conner.

it was a corporate body, clothed with the right to sue. It will be seen that the complaint does not allege that the plaintiff was created a corporation under any statute of the state of New York, and the omission to make that allegation may have arisen from the fact that the plaintiff owes its existence to the laws of Connecticut. Where the complaint does not aver that the plaintiff is a corporation created under a statute of New York (there being no presumption that it was so created), the court must apply the old rule of the common law which required proof of the corporate character of the plaintiff when the plea put the existence of the corporation in issue. *Corporatio vel non* was, therefore, one of the issues to be tried in this case.

Again, the defendant alleged that the plaintiff had recovered a judgment against one Wilson. This the answer denied. Was the fact that a judgment against Wilson had been recovered by the plaintiff a fact essential to the existence of the cause of action? If it were, it certainly was error to direct that the plaintiff should have judgment on the pleadings in this action without proof that a judgment against Wilson had ever been rendered. This action was for the failure to return an execution within sixty days.

The foundation of the sheriff's liability to the plaintiff is that he has neglected a duty which he owed to the plaintiff. There is no duty due from the sheriff to the plaintiff unless the latter had a judgment which he had an interest in having executed. Thus one of the elements of his cause of action is the possession of a judgment which he was entitled to collect by execution (*Addison on Torts, p.* 811). Just as in an action for not serving *mesne* process, or in an action for an escape, or in an action for a false return, the plaintiff must prove that he had a good cause of action which entitled him to call on the sheriff to execute the process; so in an action for failing to return an execution he must show that he was a creditor, and that he had a right, as such, to place the writ in the sheriff's hands and require it to be served and returned in

Ansonia Brass Company agt. Conner.

accordance with the practice of the court. *Forsyth* agt. *Campbell* (15 *Hun*, 236) is an authority, if authority were needed, directly in point.

It appears from the case that when this action came on for trial the plaintiff moved for judgment on the pleadings, and notwithstanding the defendant's opposition, the court ordered judgment in favor of the plaintiff, and sent the cause to another branch of the court that the plaintiff's damages might be assessed. After the assessment of damages judgment was entered up from which an appeal was taken to the general term of the marine court, which affirmed the proceedings at the trial term.

It is insisted that even if the plaintiff had no right to a judgment on the pleadings, the defendant cannot now complain because he did not mention in his notice of appeal the order of Justice GOEPP, which gave the plaintiff judgment. The answer is that the Code, which was in force when the action was tried and the appeal taken, did not require the appellant to specify in his notice every order of which he complained. It was enough that the order involved the merits and necessarily affected the judgment, as the order of Judge GOEPP unquestionably did.

It is evident that there has been no trial at all of some of the material issues raised by the pleadings. Those issues must be tried, and decided in the plaintiff's favor before a recovery can be had.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

J. F. DALY, J., concurs.

DALY, *C. J.* (dissenting). — The interlocutory judgment is reviewable upon this appeal. The provision in the new Code (*sec.* 1301) that if the appellant upon an appeal from a final judgment, intends to bring up for review thereupon an interlocutory judgment or intermediate order, he must in his notice of appeal specify the interlocutory judgment or order to be

reviewed, does not apply to this case. The portion of the new Code of which this provision is a part, did not go into effect until the 1st of September, 1880 ; and the appeal to this court was brought before that, on the 19th of May, 1880, and is consequently governed by the old Code, which did not require any such specification in the notice of appeal to review interlocutory judgments or intermediate orders.

The sheriff is required by statute to return the execution within sixty days after he receives it. The execution in this case was received by the sheriff on the 22d of November, 1875, who levied upon personal property of the defendant, in the execution, and after said levy on the 27th of November, 1875, an order of the district court of the United States was served upon the sheriff, staying all proceedings under the execution, which order was vacated, as respects the sheriff, on the 14th of December, 1875, leaving him a month and twelve days thereafter within which to sell the property levied upon and return the execution. He suffered this time to go by, however, without making any return, and more than sixty days having elapsed since the receipt of the execution by him, the plaintiff, on the 27th of January, 1876, brought the present action against him for neglecting to return the execution.

The sheriff claims that the effect of the order of the United States court staying all proceedings under the execution, was to enlarge his time for making the return ; that is, that the seventeen days during which the injunction was in force, must be added to the sixty days within which he is required to return the process, giving him until the seventh of February to make the return, and that consequently the plaintiff's action was prematurely brought on the 27th of January, 1876. No authority has been cited for this construction, and, in my opinion, it does not necessarily follow that this must be the effect of an order staying the sheriff's proceedings upon an execution. The effect of a stay of proceedings of this nature is to stay the sheriff from any further proceedings until the stay is removed ; but he may perfect his levy, if he has made

Ansonia Brass Company agt. Conner.

one, and hold the property levied upon, and the defendant, if he has been taken into execution (*Glover* agt. *Wittenhall*, 6 *Hill*, 597; *Crocker on Sheriffs*, secs. 35, 426); and if the sheriff is still under the stay after the sixty days have expired, it is an answer to any action against him for not making the return (*Paige* agt. *Willett*, 38 *N. Y.*, 35 ; *People* agt. *Carnley*, 3 *Abb.*, 215).

The sixty days allowed for the return of an execution is for the sheriff's benefit, that he may not be subject to an action or any compulsory proceedings until he has had a reasonable time to execute the process (*Renaud* agt. *O'Brien*, 35 *N. Y.*, 99). If the stay of proceedings extend over and beyond the sixty days, the sheriff having been prevented during the stay from doing anything further in the execution of the process, must necessarily have a reasonable time, after the stay is removed, to enable him to do so, which is to be determined by the circumstances of the particular case ; or if the stay is vacated before the expiration of the sixty days, and he has been stayed during a considerable portion of that period, a reasonable length of time must also be allowed him, though it may overrun the sixty days. This, in my opinion, is a safer construction than to hold that the statutory time is necessarily extended for the full length of the time that a stay of proceedings may be enforced. Where the time within which an act is to be done is under the regulation of the court, the courts have held that the effect of a stay granted by it was to enlarge the time to the extent of the stay. Thus it was held that a stay amounted to an enlargement of the old four days' rule *nisi* (*Bayard* agt. *Malcolm*, 1 *Johns.*, 300), and the defendant had the same time to plead after the service of a bill of particulars that he had when the alternative order for the bill was served (*Mulholland* agt. *Van Fine*, 8 *Cow.*, 182), the regulation of the practice in this respect being left entirely to the court. But when the time within which an act is to be done is fixed by statute the courts have not assumed any right to enlarge it except where it was abso-

lutely necessary to prevent a failure of justice, and only then to the extent that it was necessary, the time fixed by statute being rigidly enforced in cases where it would not be under the practice of the court (*People* agt. *Luth*, 1 *Wend.*, 42; *Ex parte Dodge*, 7 *Cow.*, 147; *White* agt. *Smith*, 16 *Abb.*, 109; *Bont* agt. *Griffin*, 5 *Wend.*, 84; *Cock* agt. *Bonn*, 6 *Johns.*, 526; *Graham's Prac.*, 71; 32 *id.*, —; *Todd's Prac.* [9th *Laws*], 475, 577).

The stay in this case was only during about one-fourth of the time that the sheriff has by statute for making his return. He had already levied upon the property of the defendant in the execution when the order staying his proceedings was served; and after it was removed, a month and twelve days before the sixty expired, which was ample time within which to sell the personal property that he had levied upon and made the return, he was, in my opinion, bound to make it within that time; and not having done so was liable to the action brought by the plaintiff.

It appearing by the pleadings that the plaintiff had a cause of action, nothing remained but to assess them. It may be, as the appellant claims, that the proper course of procedure was for judge GOEPP, after he rendered the interlocutory judgment, to go on and assess the damages (*Chambers* agt. *Dempsey*, 15 *Abb. Pr.*, 1; *Belmont* agt. *Pontvert*, 3 *Rob.*, 693). But I do not propose to inquire whether it was or was not irregular for the damages to be assessed by another judge as the order was made upon a written consent, signed by the respective attorneys of the plaintiff and the defendant, that the damages might be assessed by the judge holding the trial term of the court on the seventeenth day of April. All that appears on the return is that the damages under the order were assessed by judge McADAM, and we must assume, nothing appearing to the contrary, that he was the judge intended by the order and the consent upon which it was founded. The reassessment before judge SHERIDAN, it appears by the return, was ordered by the general term, the previous assessment having

been reversed by the general term upon appeal. The damages claimed in the action for the failure to return the execution within the sixty days was the amount of the judgment, but the defendant was properly allowed to show in mitigation of damages ( *Wehle* agt. *Conner*, 69 *N. Y.*, 546) the return of the execution after the sixty days with an indorsement that the sheriff had made on it $387.15, and that he had paid that amount to the plaintiff's attorney. The plaintiff then gave in evidence an account of the sale made by the defendant's auctioneer under the execution, by which it appeared that the gross amount of the sale was $480.81. This evidence was objected to by the defendant, but the plaintiff was clearly entitled to show the amount which the defendant had actually received under the execution, which, after deducting the fees which the sheriff was lawfully entitled to, showed that the amount which the sheriff had received was greater than he had indorsed upon the execution and had paid to the plaintiff's attorney. The difference was eighty dollars and eighty-three cents, which judge SHERIDAN assessed as the damages to which the plaintiff was entitled. Judge SHERIDAN found, and I infer correctly, that the sheriff's fees upon the execution were twelve dollars and eighty-three cents; and if this difference of eighty dollars and eighty-three cents arose from any disbursements to which the sheriff had been put, in the case of the property and the sale of it, it was incumbent upon him to show it, to reduce the amount of damages.

It is claimed by the defendant that between the plaintiff and the sheriff the return is conclusive as to the amount collected upon it, except in an action brought for a false return. I am not aware of any case that has gone this length. The defendant cites *Sheldon* agt. *Paine* (7 *N. Y.* [3 *Seld.*], 457); but what was held in that case was that the return on the execution was conclusive as against the sheriff; that he could not gainsay it, and that the evidence given by him to impeach it should have been excluded.

Judge RUGGLES does in that case say, in general terms, that

the return indorsed on the execution is conclusive between the plaintiff and the sheriff for the purpose of showing the amount of money raised by the officer on the writ.

The case in this state which he cites (*Townsend* agt. *Olin*, 5 *Wend.*, 207), however, was not an action to recover for a false return, but an action of assumpsit brought to recover the amount of certain notes received by the sheriff upon the execution, in which the sheriff offered to prove that the notes were not received by him in payment of the execution, or for the use of the plaintiff, but were taken for his own indemnity, which he was not allowed to do, as he returned on the execution that he had taken the notes pursuant to the plaintiff's direction. What was held in the case was that the sheriff could not be permitted to gainsay his return which, under his oath of office, was conclusive against him, but the court said that though the defendant was concluded by the return the plaintiff was not, and that he was entitled to show that what was contained in the return as to the direction given by him was not correct, which as an authority is directly the other way. What I understand to have been held in the cases is that an officer's return, being under his official oath, cannot be contradicted or impeached in the action in which it is made; that it is not traversable in the action as the court will not try upon affidavits whether it is true or false, but will leave the party to his action for a false return, and that it cannot be impeached in certain collateral proceedings where there was an ample remedy by a writ of error, or for an action for a false return, as where in an action for trespass an officer justifies an arrest under a justice's execution; that it cannot be shown that he fraudulently served the original process (*Wheeler* agt. *Latham*, 14 *Johns.*, 481; *Putnam* agt. *Man*, 3 *Wend.*, 202; *Allen* agt. *Martin*, 10 *id.*, 300; *Crocker on Sheriffs* [2d ed.], sec. 44, p. 30; *Sewell on Sheriffs*, 386).

The general rule is thus stated in a very reliable work (*Warson on Sheriffs*, p. 72), " Credence is given to the return of the sheriff, so much so that there can be no averment

Ansonia Brass Company agt. Conner.

against the sheriff's return in the same action, although a party in any other action or in an action against the sheriff may show that such a return is false;" which statement of the general rule is sustained by the older and higher authority of Dalton, whose statement of the law upon the subject may be substantially translated as follows: " As the sheriff is an officer deputed by the law and by the king for his courts, no one will be allowed to contradict or traverse (' *admit de averrer directment encounter* ') his return, except in some special cases, the reason being that justice must be administered; that the judges who administer it must necessarily put trust and confidence in such a person; and that if every one could contradict the returns of the sheriff, justice would be obstructed by their acts and delays; and yet sheriffs and their officers have often been found faulty on their part in making their returns, &c., which, in fact, arises from corruption, and partly by their negligence and remissness; and as the making of such false returns is mischievous to the subject, the statutes and laws of the realm have allowed men, in some cases, to contradict the return of the sheriff (*de aver encounter le returne del vic.*) " (*Dalton on Sheriffs, chap.* 42, *pp.* 189 *and* 190). But whatever the rule may be, the sheriff here offered the return to show, in mitigation of damages, the actual amount he had received; and on the authority of this very case of *Townsend* agt. *Olin* (*supra*), the plaintiff was entitled to show that the return was not correct, and that the sheriff had received a larger amount.

It was further objected to this evidence that the plaintiff had brought an action to recover treble damages against the defendant for taking, in this case, excessive fees, in respect to which it is sufficient to say that the action was brought after the present action was commenced and the cause of action here had accrued; and that nothing was determined in that action, as the complaint was dismissed because it was not properly brought. It is by no means clear that the liability of the sheriff, under the statute, for taking excessive fees, if

there had been a recovery, would have been material upon the question of damages in this action; but if it would there was no recovery, the action being dismissed. It is therefore incumbent upon the plaintiff to prove, under the issue joined, that the plaintiff was a corporation, and that the execution returned as collected in part was founded upon a valid judgment. The time to make that objection to the plaintiff's recovery was when the motion was made for judgment upon the pleadings, when proof of both these facts might have been supplied. It appears from the order giving judgment upon the pleadings that the motion was opposed, and that the parties had consented in writing that the damages might be assessed by the judge holding the trial term, on the 17th of August, 1878, who assessed them at the nominal amount of six cents, from which the plaintiff appealed, and the general term of the marine court ordered another assessment. It does not appear that any such objection as the want of this proof was raised before judge GOEPP, and it is inferable that it was not, as in his written opinion the only questions he discusses are these that I have already considered, and which are the questions mainly relied upon by the defendant in the appeal to this court. The objection was made, during the assessment before judge SHERIDAN, of the want of proof of a judgment; but the plaintiff gave the execution in evidence, with the defendant's return in writing that he had made $387 upon it; and the answer given to the objection was that, it appearing by the return that the sheriff had acted upon the execution, and that he had made $387 upon it, and had paid that amount to the plaintiff, it was not necessary to prove the judgment upon which the execution was issued. I think the objection was then too late. It should have been made to the judge before whom the motion was argued for judgment upon the pleadings, when the proof of it, as well as of the corporate character of the plaintiff, might have been supplied; or it should have been raised on the appeal to the general term of the marine court. The previous assessment was at a nominal

Ansonia Brass Company agt. Conner.

·sum, with which the defendant was satisfied, as he did not appeal; and if he meant to rely upon the want of this formal proof, it was his duty to have raised this objection then, when the plaintiff brought an appeal to obtain, which he did, a reassessment, a proceeding that was unnecessary, and which involved loss of time and expense, if the judgment given upon the pleadings was defective in assuming the existence of facts that had not been proved.   I do not think it neces-sary to consider whether the proof should have been given under the pleadings or not, as, in my opinion, the defendant is not entitled to have the judgment reversed on the appeal to this court, for the want of this formal proof, having made no such objection when the plaintiff on the trial before judge GOEPP moved for judgment on the issues presented by the pleadings, and when, for all that we know, the proof might then have been supplied if the objection had been made of the want of it (*Doane* agt. *Eddie,* 16 *Wend.,* 525, 526; *Jackson* agt. *Davis,* 5 *Cow.,* 127; *Pierce* agt. *Sackett, Lalor Rep.,* 115; *Lawrence* agt. *Barker,* 5 *Wend.,* 304, 305; *Meritt* agt. *Seaman,* 6 *Barb.,* 335; *Patterson* agt. *Westervelt,* 17 *Wend.,* 545; *Beekman* agt. *Bond,* 19 *id.,* 444; *Ryerss* v. *Wheeler,* 15 *id.,* 439; *Ford* agt. *Monroe,* 20 *id.,* 211; *Jack-*·son agt. *Chintman,* 4 *id.,* 283; *Underhill* agt. *Pomeroy,* 2 *Hill,* 603).

In my opinion the judgment should be affirmed.